UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA

v.                                                CASE NO. 04CR10217GAO

DARREN F. WILDER

---

## MOTION TO SUPPRESS EVIDENCE AND
## INCORPORATED MEMORANDUM OF LAW

NOW COMES the Defendant, Darren Wilder, ("Wilder"), through counsel, and hereby moves this Honorable Court to suppress evidence seized pursuant to unlawful search warrants in this case. It is respectfully submitted that the search warrants violated Wilder's Fourth Amendment rights because they lacked probable cause and were based upon intentionally false and misleading information. In support of this Motion, the Defendant incorporates the instant Memorandum of Law and states as follows:

## I. INTRODUCTION[1]

On January 14, 2004, search warrants were issued for the search of Wilder's residence and vehicle. The search resulted in the seizure of two desktop computers on which the alleged child pornography was located. Immigration and Customs Enforcement Special Agent Colleen Forgetta submitted the Application for the search warrants, which included a lengthy Affidavit and three images from a website. (See Exhibit 1, attached hereto). Based on the information in

---

[1] On July 21, 2004, Darren Wilder was indicted and charged in three counts with transportation of child pornography (in violation of 18 U.S.C. § 2252(a)(1)), receipt of child pornography (in violation of 18 U.S.C. § 2252(a)(2)), and possession of child pornography (in violation of 18 U.S.C. § 2252(a)(4)(B).

1

the Affidavit, United States Magistrate Judge Robert B. Collings authorized the search of Wilder's residence and car. (See Exhibit 2, attached hereto).

It is respectfully submitted that the Affidavit failed to establish probable cause for the searches and that the Affidavit contained materially false information and failed to include relevant information.

## II. BACKGROUND

Special Agent Forgetta's Affidavit is 42 pages long with a schedule attached. The following summary is broken into sections according to the manner in which the Affidavit is organized.

### A.   Paragraphs 1 – 7

Paragraphs 1 through 7 provide an overview of Agent Forgetta's experience and the investigation leading up to and including Wilder. In this section, Agent Forgetta states that:

1   she has been a Special Agent for 20 years (¶1);

2.   at the time of the affidavit, she was "currently assigned to investigate criminal violations relating to child exploitation and child pornography"[2] (¶1);

3.   her experience with child pornography comprised attending a course that 'included a segment on Cybercrimes and Child Pornography" and having "the opportunity to observe and review numerous examples of child pornography" (¶1);

4.   she "participated in the execution of approximately 100 search warrants involving various criminal offenses"[3] (¶1);

---

[2] Although Agent Forgetta did not report that the Wilder investigation was her first child pornography investigation, a fair reading of her synopsis should have led the Magistrate to this conclusion.
[3] Agent Forgetta does not specify how many search warrants were related to crimes concerning child pornography.

2

5. there is probable cause to search Wilder's home and car based on the allegations against the Defendant (¶2-7); and

6. information in the Affidavit is based upon personal investigation and "conversations with other law enforcement officers," none of whom are named (¶4).

**B.     Paragraphs 8 & 9**

Paragraphs 8 and 9 give a broad, boilerplate overview of technical terms related to the internet and computers. The section is nine pages (almost a quarter of the Affidavit) and provides more bulk than information of specific relevance to the Wilder investigation.

**C.     Paragraphs 10 & 11**

Paragraphs 10 and 11 provide a brief, informative study of computers and child pornography. Again, Wilder is not mentioned in this section and the affiant is not relating her personal knowledge or experience.

**D.     Paragraphs 12 – 27**

Paragraphs 12 – 27 explain the underlying New Jersey investigation leading to the suspicions associated with Wilder. Wilder is referenced once (in ¶20). After an introduction, the section explains, among other things, that:

1   the United States investigated Regpay, a New Jersey computer-based billing company shown to assist other website operators in distributing child pornography (¶¶13, 14);

2.   another company, Iserve.com, often processed Regpay's transactions (¶14);

3.   federal agents subscribed to a website that used Regpay for billing (¶15);

4.   a registrant sees certain details on the computer screen when subscribing through Regpay (¶¶15, 16);

    5.    customer information on Regpay's servers was seized in the investigation (¶17);

    6.    information from the agent who subscribed to Regpay was found during the seizure (¶¶18, 24);

    7.    leads were sent to national field offices based on the seized customer records and additional confirmation that the subscriptions were to websites, some of which were still active and all of which were independently verified as containing child pornography (¶¶19, 20);

    8.    the current warrant application evolved from one of those leads (¶20);

    9.    Regpay stored customer information in its database, including biographical and financial items, a subscription ID, and the subscriber's login name and password (¶¶21-23, 25, 26); and

    10.    both a valid credit card and e-mail address were required to access websites associated with Regpay (¶27).

**E.    Paragraphs 28 – 48**

Paragraphs 28 – 48 fall under the heading, "Probable Cause to Search the Subject Premises." Agent Forgetta states that:

    on or about March 15, 2003, an individual using the name Darren Wilder and a certain e-mail address and credit card number subscribed to a website, www.lust-gallery.com, believed to contain child pornography (¶¶28-30);

    2.    on March 26, 2003, an unnamed federal agent purchased a one-month membership to www.lust-gallery.com, noticing the hallmarks of a Regpay transaction (¶31);

    3.    *after* accessing the website, the agent downloaded images, three of which are described in the affidavit, of children engaged in sexually explicit conduct (Agent Forgetta never states that she viewed the images.) (¶31);

4.  on July 24, 2003, another unnamed federal agent purchased a one-month membership for approximately $57.90 to www.lust-gallery.com, downloading images of children engaged in sexually explicit conduct *after* accessing the website (Agent Forgetta describes these images in detail.) (¶32);

5.  the home page of the website features "images of several females of various poses, and an invitation to become a member of the website" (Agent Forgetta does not describe these images.) (¶¶31, 32);

6.  she reviewed images and general content of the website from the July 24 session (¶33);

7.  in reviewing the preview page as preserved from the March 26 session, she saw, among other items, the following:

> a)  the title, "LUST GALLERY – a Secret Lolitas Archive," at the top of the page,
>
> b)  two bits of text, each followed by "thumbnail photos" going "across the width of the screen," with each image showing "at least two unclothed minors with some images focused on the minor's genitalia,"
>
> c)  an announcement that the website contains numerous photographs of girls aged 14 or younger (¶34);

8.  records from Verizon, an internet service provider, link the e-mail address vzelkk2n@verizon.net to Wilder's account, which was active on or about March 15, 2003 (¶¶35, 36, 44);

9.  records from Citibank showed that the credit card assigned to Wilder made a charge to Iserve on March 15, 2003 for $57.90 (¶37);

10. Wilder has a prior criminal conviction in the United States District Court of Massachusetts for possession of child pornography, for which he was sentenced in 2000 and later placed on supervisory release in 2002 (¶¶38, 39);

11    as late as December 30, 2003, Wilder's probation officer saw desktop and laptop computers at the SUBJECT PREMISES, saw the laptop in the SUBJECT VEHICLE, and confirmed that Wilder had internet access at home (¶40);

12. electric company and driver's license records showed Wilder to reside at the SUBJECT PREMISES (¶¶41, 42);

13. the SUBJECT VEHICLE was registered to Wilder and parked at the SUBJECT PREMISES (¶43);

14. individuals tend to follow general patterns of behavior when involved in the receipt and collection of child pornography (¶46); and

15. there is probable cause that Wilder is a collector of pornography based on:

    a) his purchase of a membership to a child pornography website,

    b) his prior criminal conviction,

    c) his prior use of a computer to order child pornography,

    d) the preview page of the website for which he subscribed, based on the nature of the images on that page (¶47).

F. **Paragraphs 49 & 50**

Paragraphs 49 and 50 describe Agent Forgetta's justification for the list of places to be searched pursuant to the warrant.

G.     Schedule A

Attached to the Affidavit, Schedule A details the places to be searched pursuant to the search warrant and the items to be searched for.

Additionally, the Magistrate was provided with three images described as A, B and C on page 28 of the Affidavit. These images were downloaded from a website by a law enforcement agent not from the Defendant's computer. The Magistrate concluded that two of the three images contained minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2256(1)(2)(E)[sic](lascivious exhibition of the genitals)(see Exhibit 2).

### III.   SUMMARY OF THE ARGUMENT

The evidence seized pursuant to the warrant mandates suppression because the Affidavit fails to establish probable cause for the issuance of the warrant because there is no evidence that Wilder actually possessed or transmitted child pornography by purchasing a subscription to a website which permitted him to view without downloading both adult and child pornography. Moreover, Agent Forgetta omitted information relevant to her Affidavit and misrepresented several facts in her allegations. For example, Wilder's subscription expired one month after he subscribed and ten months before the warrant was applied for. (See Affidavit of Darren Wilder, filed herewith). This conspicuous fact was accessible to Agent Forgetta in the detailed information she and other agents obtained from the Regpay database. Despite the availability of this information, Agent Forgetta omitted it from her Affidavit.

The website at issue, www.lust-gallery.com, is not currently dedicated to only child pornography, as strongly suggested in the Affidavit. (See Affidavit of Peter Charles Horstmann, Esquire, filed herewith). There is other material available throughout the site and viewable from the home and preview pages, including images that fall outside the definition of children

engaged in sexually explicit conduct. (See Affidavit of Peter Charles Horstmann, Esquire). Moreover, the preview pages referenced in ¶ 34 is not the preview page for the "lustgalleries' website. Despite viewing the alleged preview page and the website, Agent Forgetta did not provide an accurate description of it in her Affidavit and misled the Magistrate into believing that the website contained only child pornography.

## IV. ARGUMENT

### A. THE EVIDENCE OBTAINED PURSUANT TO THE UNCONSTITUTIONAL SEARCH WARRANT MUST BE SUPPRESSED.

#### 1  THE SEARCH WARRANT APPLICATION DID NOT SUFFICIENTLY ESTABLISH PROBABLE CAUSE, LEAVING THE SEARCH WARRANT AND SUBSEQUENT SEARCH INVALID.

Because the search warrant application originally failed to establish probable cause, the resulting search of Wilder's home and car was unconstitutional and invalid. The Fourth Amendment to the United States Constitution provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation...." U.S. Const. Amend. IV. A magistrate evaluates whether a warrant application establishes probable cause by making a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added). The magistrate must consider the totality of the circumstances to determine whether there is a substantial basis for concluding probable cause exists. *Id.* Reasonable inferences may be drawn from the facts alleged in the affidavit. *United States v. Falon*, 959 F.2d 1143, 1147 (1st Cir. 1992). However, an affiant's unsupported conclusions are not entitled to any weight in the probable cause determination. *United States v. Vigeant*, 176 F.3d 565, 571 (1st Cir. 1999). "Mere suspicion, rumor, or strong reason to suspect wrongdoing are not sufficient." *Id.* at 569.

Fundamentally, a "warrant application must demonstrate probable cause to believe that (1) a crime has been committed - the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999). Here, the warrant application, which was supported solely by Agent Forgetta's Affidavit, failed on both the commission and nexus elements. Throughout the 42-page Affidavit, Agent Forgetta never once attested to any information that shows Wilder downloaded images of child pornography over the Internet. This is a fatal omission because website images (unlike newsgroups) may be viewed without downloading and without possession. *United States v. Stulock*, 308 F.3d 922, 925 (8th Cir. 2002). When stripped of superfluous information and boiled down to its bare bones, the Affidavit is left with only four main assertions. Affidavit, ¶47. Two of them are unrelated to the undercover operation that led to Wilder: his prior conviction and his prior use of a computer to purchase pornography which are presumably the same thing. The two remaining allegations, Wilder's subscription to a child pornography website and the lascivious nature of images on that site's preview page, do not implicate Wilder in the transportation, receipt, or possession of child pornography. Even the subscription at issue occurred ten months prior to the warrant application and expired and was never renewed by Wilder. All of this leaves Agent Forgetta with a totality of the circumstances that results in suspicion, an insubstantial basis for probable cause. The search warrant here was unsupported by probable cause, violated the Fourth Amendment, and must be deemed invalid.

      a.      <u>The Allegations set forth in the Affidavit do not contain evidence of the Commission of a Crime.</u>

              i.      *Subscription to a website does not constitute transmission or possession of images.*

Special Agent Forgetta's discovery, during her investigation, that Wilder subscribed to a website simply does not show a fair probability that he committed a crime pursuant to 18 U.S.C. § 2252 or § 2252A. First, the Affidavit does not establish that Wilder's mere purchase of a membership to the website at issue resulted in the transmission of images into his or others possession. When examining probable cause for criminal conduct concerning child pornography, there must be an actual transfer of images. *See United States v. Zimmerman*, 277 F.3d 426, 432-33 (3d Cir. 2002) (with no evidence that images downloaded to or located on defendant's computer, no probable cause to search for possession of pornography); *United States v. Upham*, 168 F.3d 532, 533 (1st Cir. 1999) (no issue brought up about commission element of probable cause determination where computer images were received by undercover agent).

In a similar New York Internet child pornography case, the court found that although an affidavit established a defendant's subscription to a newsgroup that facilitated access to child pornography, it failed to show that he automatically received images by e-mail or ever downloaded images. *United States v. Perez*, 247 F.Supp.2d 459, 481-83 (S.D.N.Y. 2003).[4] The court reasoned that "the affidavit contain[ed] nothing concrete to suggest that [the defendant] had transmitted or received images of child pornography," concluding that "a finding of probable cause would not be reasonable" in such a case. *Id.* at 483-84. In *Perez*, the Affidavit alleged that the defendant subscribed to a newsgroup from which the defendant could have accessed child pornography. *Id.* At 464-465. As in the instant case there was no evidence that the defendant had actually possessed or transmitted the images. *Id.* At 483-484.

---

[4] The Government did not appeal the Court's decision in *Perez*.

10

In *Perez,* like the instant case, the Government conceded that there was "nothing in the record to indicate" that the defendant did anything more than subscribe. *Id.* At 471. In the instant case the Defendant merely subscribed and allowed his subscription to expire ten months before the Application for the Search Warrant. The Government further conceded that there was no basis in *Perez* to prosecute someone who did not receive the images. *Id.* at 480. The same is obviously true for this case.

A series of Ninth Circuit cases appears to have drawn the same line between actual transmission and mere potential for receipt. *United States v. Hay,* 231 F.3d 630 (9th Cir. 2000) (probable cause found where images containing child pornography were transmitted to defendant's computer); *United States v. Lacy,* 119 F.3d 742 (9th Cir. 1997) (probable cause found where defendant downloaded two files containing child pornography to his home address); *United States v. Weber,* 923 F.2d 1338 (9th Cir. 1990) (no probable cause where defendant ordered child pornography but did not receive it before search warrant executed). Finding that subscription without delivery of images was insufficient for probable cause, a Missouri district court colorfully analogized the issue to another misapprehension of alleged criminal behavior:

> **Saying that illegal items *could* be delivered over the internet is like saying that drugs *could* be delivered to a home when law enforcement was not watching, but we do not normally issue search warrants on this kind of speculation.**

*United States v. Strauser,* 247 F.Supp.2d 1135, 1144-45 (E.D.Mo. 2003).

At best, Agent Forgetta could state that Wilder could have possibly downloaded images to his computer.[5] But there is no indication or substantial inference that this is what he actually did. Payment for a subscription only represents the possibility – not a fair probability – that Wilder downloaded images to his computer. This possibility exists for anyone who has Internet

---

[5] There was no evidence of downloading in the Affidavit. Moreover, images cannot be transmitted to the website unlike a newsgroup in the *Perez* case.

access and a credit card. The Affidavit does not state whether Wilder even logged into the site after the initial subscription if at all. Furthermore, the images described in the Affidavit are those downloaded by an unnamed federal agent from the site. There is no suggestion that they came into or went out of Wilder's possession, either directly or indirectly.

        ii.       *Viewing images on website is <u>not</u> illegal.*

Although, there is no evidence in the Affidavit that Wilder viewed images on the website. Assuming *arguendo,* that such evidence may be inferred, simply viewing internet-based computer images of child pornography does not constitute transmission of images into his or others possession.[6] One circuit court has held that there is no possession where a person simply viewed an image on a website, even when the image was automatically stored in cache, without that person purposely saving or downloading the image. *United States v. Stulock*, 308 F.3d at 925. The Tenth Circuit has found that a defendant had control (and possession) of images that were viewed and concurrently stored in the browser's cache where he asserted his control by habitually and intentionally deleting them. *United States v. Tucker*, 305 F.3d 1193, 1205 (10th Cir. 2002). These cases strongly suggest that more than mere passive viewing of images is necessary to find transmission and possession of images.

For example, a person must purposefully and permanently transmit an image file from one computer to another. None of the information in the Affidavit claims that the images Wilder allegedly viewed on the alleged preview page were saved on Wilder's computer or that he intended for this to occur. That Wilder even viewed the images described in the Affidavit is pure speculation. In fact, Wilder could have viewed legal pornographic images of adults. (See Affidavit of Peter Charles Horstmann, Esquire). Additionally, the Affidavit's generic

---

[6] The issue of whether images viewed but not actively downloaded to a computer are considered possessed or received is open in this and other federal appeals courts. *See, e.g., Perez*, 247 F.Supp.2d at 484, n.12. Courts which have addressed this issue have uniformly found that "viewing" images on the Internet does not constitute possession.

12

information about computers and the internet does not suggest that viewing images results in images being saved to a computer. Viewing these images, whether considered by itself or in the totality of the Affidavit, also does not amount to a fair probability that Wilder actually transmitted images into his possession.

      **b.**    <u>By the time the warrant application was submitted, Wilder's expired website subscription was too stale to support the nexus element.</u>

Furthermore, Wilder's expired subscription to a website that contained child pornography, even if shown to be connected to the possession of images, still failed to provide a timely nexus to believe evidence would be on Wilder's computers.

The nexus element of the probable cause determination requires that the totality of circumstances "be weighed in each case in order to assess the reasonableness of inferring that evidence of the crime can be found at the" specified location. *Feliz*, 182 F.3d at 88. "[T]he temporal proximity or remoteness of the events observed has a bearing on the validity of a warrant[,]" although there is "no hard and fast rule" on this issue. *United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976). All that the federal investigation uncovered here was that Wilder purchased a single one-month subscription that merely provided access to the website, a full 10 months before submitting the search warrant application.

Despite having access to Regpay's database until July 2003, there are no claims that Wilder paid for any more subscriptions after March, 2003. Affidavit, ¶¶17, 37. Also, at the very least, Agent Forgetta, should have known that Wilder's subscription expired 30 days after it was purchased. This situation belies the assertion that accessing these websites is a continuing practice for Wilder. In light of the fact that there is no allegation in the Affidavit that Wilder ever actually received child pornography, using the cancelled March 2003 subscription for a warrant application almost a year later is that much more specious. The membership purchase

was simply too stale by the time the application was submitted to sufficiently buttress the nexus requirement for probable cause.

   c. <u>*United States v. Grant* is distinguishable from the facts in this case.</u>

  Although the First Circuit case *United States v. Grant* shares issues with Wilder's situation, the investigation there uncovered significantly more information to support probable cause than was found here. The decision to find probable cause in *United States v. Grant* was based on the following findings of fact: 1) the defendant was twice connected, six months apart, to internet channels dedicated to the distribution of pornography amongst its members, 2) membership to one channel required the verified possession of 10,000 images of children engaged in sexually explicit conduct that could be made accessible to other members, 3) a user name was linked to the defendant through accounts and IP addresses associated with his internet service providers, 4) the defendant had a file transfer server on his home computer, and 5) over 40,000 images were found in a similar file storage device for another member connected to the same internet channel. 218 F.3d 72, 76 (1st Cir. 2000).

  Wilder's predicament is clearly distinguishable; whereas the Defendant in *Grant* essentially admitted to possession by his membership in one of the channels which required "verified possession," Wilder made no such admission here. Additionally, Wilder was only once connected to a website, through an expired one-month subscription, that did not permit members the capability to exchange images of child pornography with other members. Agent Forgetta's Affidavit does not show that there was a fair probability that Wilder could exchange files with other people or that he could possess pornographic images incident to his website membership. As a result, the facts of this case should be evaluated in light of, and must not be improperly conflated with, the facts in *United States v. Grant*.

14

>   *d.*   <u>*The good faith exception does not save the evidence from being excluded.*</u>

Because the good faith exception to the exclusionary rule does not apply to the invalid search warrant executed in this case, evidence obtained pursuant to that warrant must be suppressed. In many situations, the exclusionary rule makes evidence obtained by an unconstitutional search and seizure inadmissible in court. *United States v. Leon*, 468 U.S. 897 (1984); *Mapp v. Ohio*, 367 U.S. 643 (1961). The primary purpose of the exclusionary rule is to deter misconduct on the part of law enforcement officials. *Leon*, 468 U.S. at 916. Therefore, the exclusionary rule does not apply where an officer executing a warrant issued by a neutral and detached magistrate reasonably relies on a warrant in objective good faith, since there will be no deterrent effect. *Id.* at 922-23. However, there are certain situations where the good faith exception does not eclipse the exclusionary rule, including when a "warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." *Id.* at 915, *citing Gates*, 462 U.S. at 238-39. In other words, an officer cannot "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923, *quoting Brown v. Illinois*, 422 U.S. 590, 610-11  Where the validity of finding probable cause is either not in doubt or is a close question that is prudently evaluated, the good faith exception usually applies. *See United States v. Robinson*, 359 F.3d 66, 70 (1st Cir. 2004) (magistrate's extremely thorough deliberation and officer's forthrightness justified officer's reliance on affidavit); *United States v. Crosby*, 24 Fed.Appx. 7 (1st Cir. 2001) (affidavit containing 10 e-mails and detailed descriptions of about 20 pornographic images could be relied upon in objective good faith).

Agent Forgetta cannot be shielded from the exclusionary rule by the good faith exception. As detailed earlier, the Affidavit she produced and submitted significantly lacked the probable cause necessary for a valid warrant and intentionally misrepresented and omitted material information. Wilder's past conviction and prior use of a computer to purchase child pornography are not connected to the New Jersey investigation and are tenuously relevant to Agent Forgetta's suspicions. An expired one-month membership to a website that contained legal adult pornography does not trigger a probability that images of child pornography were transmitted to Wilder's computer. Agent Forgetta's best case for a fair probability that Wilder viewed any of the images described in the Affidavit was the preview page. None of the Affidavit's main pillars is left standing. The totality of suspicion can never salvage the individual flaws.

At the time, Agent Forgetta had 20 years of general experience as a special agent and participated in the execution of about 100 search warrants. Unavoidably, she dealt with numerous probable cause determinations in the past. Such familiarity with the standard would have shown her that the Affidavit here was so insufficient that no objectively reasonable officer would have relied on it. Her careless misrepresentations and conspicuous omissions strongly suggest a working knowledge of how to present the most persuasive affidavit possible, even at the expense of a complete, accurate disclosure. Since Agent Forgetta was both the affiant and the primary officer authorized to execute the search warrant, the issue of whether she could reasonably rely on a magistrate's warrant should not be divorced from the legal insufficiency of her own affidavit supporting that warrant. *See United States v. Ricciardelli*, 998 F.2d 8, 16 (1st Cir. 1993) ("[g]overnment agents may not trespass beyond the bounds of well-delineated Fourth Amendment procedures and then attempt to blunt the effects of their pererrations by foisting the

blame on the magistrate"). *Compare Robinson*, 359 F.3d at 70. In addition, suppression of evidence here would deter future officers in a similar position who might prematurely seek a search warrant by cobbling together a series of suspicions that, in the end, fail to mask the lack of probable cause, especially in the context of invading a person's home. *See Wilson v. Layne*, 526 U.S. 603 (1999) (one's privacy in the home has a special status under the protective watch of the Fourth Amendment). With substantial reason to invoke the exclusionary rule and no legitimate justification for the good faith exception to apply, the evidence obtained pursuant to the search warrant must be suppressed.

B.  **UNDER *FRANKS*, A HEARING MUST BE GRANTED BASED ON THE AFFIDAVIT'S MATERIAL MISLEADING MISSTATEMENTS AND OMISSIONS, THE WARRANT MUST BE FOUND INVALID, AND THE EVIDENCE MUST BE EXCLUDED.**

Wilder is entitled to a *Franks* hearing because of Agent Forgetta's false statements and material omissions in her Affidavit, and information at that hearing will establish that the evidence obtained pursuant to the warrant must be suppressed. A defendant is entitled to a *Franks* hearing to challenge the validity of an affidavit supporting a warrant application by showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause . . . ." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "A material omission in the affidavit may also qualify for a Franks hearing in place of a false direct statement, provided the same requisite showing is made." *United States v. Nelson-Rodriguez*, 319 F.3d 12, 37 (1st Cir. 2003), *citing United States v. Scalia*, 993 F.2d 984, 987 (1st Cir. 1993).

17

"An evidentiary hearing is required only if the defendant is able to show that alleged misstatements or omissions are material to the probable cause determination." *United States v. Stewart*, 337 F.3d 103, 107, n.2 (1st Cir. 2003). If, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

The good faith exception to the exclusionary rule does not apply where the application for or the execution of a warrant is objectively unreasonable under the *Franks* standard. *Leon*, 468 U.S. at 923. *See also Ricciardelli*, 998 F.2d at 15-17 (both omission of available key information in affidavit and failure to correct patent defects in affidavit merited suppression).

At a minimum, Agent Forgetta recklessly omitted material information from her Affidavit and misstated facts in her allegations. Like *Perez, supra* at 499, she recklessly excluded information from her Affidavit that Wilder had (1) the option of viewing images without downloading them and (2) viewing or downloading adult pornography. *United States v. Fantauzzi*, 260 F.Supp.2d 561, 566-567 (2003)(agent in *Perez* recklessly omitted information that subscribers had options and did not automatically receive images). It is clear from the evidence submitted at Wilder's probation revocation hearing that the website contained lawful images of nude children. (See Affidavit of Peter Charles Horstmann, Esquire). This fact and any adult pornography contained on the web site were omitted from the Affidavit.

Additionally, she left out the very significant fact that Wilder cancelled his one-month website subscription. (See Affidavit of Darren Wilder). This unavoidably calls into question the relevance of one of the key pillars of her argument for probable cause. Yet she must have known, or should have known, about the membership expiration based on the Regpay database

records in her possession as well as Wilder's credit card statements which were subpoenaed and showed only one billing for the website. Furthermore, Agent Forgetta provided a materially insufficient description of the website to which Wilder subscribed. (See Affidavit of Peter Charles Horstmann, Esquire). A more complete description would have shown that the site did not focus on child pornography to the exclusion of other forms of protected speech such as adult pornography. Without providing this in her Affidavit, Agent Forgetta distorts the significance of the website itself and the preview page, which is another one of the four main allegations she uses to establish probable cause and create the misconception that the website contains only child pornography. These material omissions and misstatements substantially show that an evidentiary hearing is required to address this matter. Additionally, this situation injects even more doubt into the validity of the Affidavit and the warrant. When the omissions are considered and the misstatements are removed, clearly there is insufficient support left for probable cause. Without probable cause and without the good faith exception, the evidence must be suppressed.

C.  **REQUEST FOR HEARING**

The Defendant hereby requests a hearing on the instant motion.

## V.  CONCLUSION

WHEREFORE, based on the foregoing arguments and authorities, the Defendant respectfully requests that this Honorable Court grant his Motion to Suppress Evidence.

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999


## CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 29th day of October, 2004, a copy of the foregoing DEFENDANTS' MOTION TO SUPRESS was served electronically upon Sherri Stephan, Trial Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210

Peter Charles Horstmann, Esquire