IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 04-10217-GAO |
| v. ) | |
| ) | |
| DARREN F. WILDER ) | |
| ) | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION OF DEFENDANT PURSUANT TO 18 U.S.C. §3142(e)

The United States of America, by and through its counsel, Michael J. Sullivan, United States Attorney for the District of Massachusetts and Sherri A. Stephan, Trial Attorney, United States Department of Justice, Criminal Division, Child Exploitation and Obscenity Section, hereby moves this court pursuant to Title 18, United States Code, Section 3142(f) to detain defendant as both a danger to the community and as a risk of flight.

### I. PRELIMINARY STATEMENT

The government is authorized to request detention because Defendant has been charged with a crime of violence. *See* 18 U.S.C. §3142(f)(1)(A) and §3156(a)(4)(C). In addition, a rebuttable presumption exists that no condition or combination of conditions can reasonably ensure the safety of the community or the appearance of Defendant as required. *See* 18 U.S.C. §3142(e).

### II. PROCEDURAL HISTORY

After pleading guilty to possession of child pornography in November of 2000, Defendant was sentenced to 27 months incarceration followed by 24 months of supervised release. On

1

November 2, 2000, he was released from incarceration and placed on supervised release. On February 18, 2004, Defendant was arrested for violating his supervised release. At the resulting hearing, the Honorable Judge Patti B. Saris entered a judgment of revocation based on two findings: that Defendant committed another criminal offense while under supervision (the offenses now before this court) and that he failed to truthfully answer all inquiries and follow the instructions of his probation officer. Based on these findings, Judge Saris re-incarcerated Defendant for an additional 13 months. Defendant is due to be released March 3, 2005.

On July 21, 2004 Defendant was indicted on three federal criminal offenses involving the transportation, receipt and possession of child pornography. The indictment was based, in part, upon acts that resulted in his supervised release violation. A second superseding indictment was returned on February 2, 2005 which maintained the substantive offenses. Defendant is scheduled for both an arraignment on the second superseding indictment and a detention hearing on March 4, 2005.

### III. SUMMARY OF CASE

Defendant, Darren F. Wilder is a 34-year-old male who, prior to his current incarceration, resided alone at 5 Valley Road, Dracut, located in the District of Massachusetts. The present investigation revealed that on or about March 15, 2003, Defendant used his computer and the email address vzelkk2n@verizon.net, to purchase a subscription to the web site www.lust-gallery.com (hereinafter lust-gallery), which contained child pornography.

The investigation further revealed that prior to purchasing a membership to lust-gallery potential customers view a preview page. The lust-gallery preview page describes the site's content as "a secret lolitas archive." The text on the page states, *inter alia*,

> [t]hat you're here means you're a member of one of the sites created by RedStudio. This website was developed exclusively for our members and will never be revealed to the general public. Because you were a subscriber before, we know what you like and need. And we're here to give EXACTLY the things you like EXACTLY the way you like them.

This text is followed by thumbnail photos appearing one after the other across the width of the screen, each of which depicts at least two unclothed minors with some images depicting their genitalia. Below the first row of images, additional text states "Lust Gallery contains thousands of EXCLUSIVE images never published before. Moreover, inside we have something THAT HAS NEVER BEEN SHOWN BEFORE UNTIL NOW!" The above-referenced text is followed by another paragraph stating:

> All models inside are 14 or younger, every image shows at least 2 or 3 girls, every gallery is at least 50 images. Currently we have over 3500 high quality digital photos in over 40 sets. The collection is updated weekly so there is always something new for you to enjoy. Created by real young model lovers for real young model lovers. Lust Gallery is truly an elite product. We guarantee you complete satisfaction for a truly unforgettable experience.

This text is followed by another row of thumbnail images across the width of the screen. Again, each image shows at least two unclothed minors with some images depicting the minor's genitalia.

A search warrant was obtained for Defendant's residence on January 14, 2004 and executed on January 15, 2004. Two hard drives were among the items seized in the search. The hard drives were analyzed by Forensic Agent Mike Howard of the Bureau of Immigration and Customs Enforcement and Computer Forensic Specialist Lam Nguyen of the High Technology Investigative Unit of the United States Department of Justice, Child Exploitation and Obscenity Section. The analysis revealed that Defendant possessed hundreds of images of children engaged

in sexually explicit conduct and that he subscribed to dozens of child pornography related newsgroups including downloading hundreds of child pornography images.

The computer analysis also revealed Defendant repeatedly accessed child pornography related web sites such as: www.childlove.org, www.toplolitas.org, www.teenpictures.org, www.youngdesires.net, www.nake-teenage-girls.com, www.lolitas-nude-oung.com, www.nude-lolita-teens.com, www.lolitaarchives.com and www.preteen-pages.com/secret.

In addition, a newsgroup posting from springbegins@hotmail.com dated April 1, 2003 was found on Defendant's computer. The posting requests pictures of children between the ages of eleven and sixteen to trade. On April 4, 2003, Defendant sent an email to springbegins@hotmail.com and attached four images depicting a young child engaged in sexually explicit conduct. In the text part of the message Defendant wrote "now its your turn."

At the time of the search warrant execution, Defendant spoke to law enforcement agents. He stated, in part, that he liked teenage girls. He admitted to being "enticed" by certain Internet cites and to lying to his probation officer about using the Internet to access child pornography.

Count 1 of the superseding indictment (transportation of child pornography) carries a maximum period of incarceration of 15 years. Count 2 (receipt of child pornography), carries a maximum period of incarceration of 40 years. Count 3 (possession of child pornography), carries a maximum period of incarceration of 10 years. In addition, there is a mandatory minimum sentence applicable to Count 2, *to wit*, a defendant convicted of a second offense is subject to a

mandatory minimum of 15 years incarceration to a maximum of 40 years.[1]  18 U.S.C. §2252(b)(1).

## IV. LEGAL STANDARD

Under the Bail Reform Act of 1984, pretrial detention is permitted pursuant to Title 18, United States Code, Section 3141, which provides:

> (a) Pending trial.–A judicial officer authorized to order the arrest of a person under section 3041 of this title before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter.

The standard for detention is set forth in Title 18, United States Code, Section 3142(e) which states in pertinent part:

> (e) Detention.– If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

In the case *sub judice*, we start with a presumption in favor of detention. In 2003, the Protect Act amended Title 18, United States Code, Section 3142(e) to add child exploitation crimes to the list of offenses entitled to a rebuttable presumption in favor of pretrial detention of the accused. P.L. 108-21. This amendment included the offenses with which Defendant has been charged. As so amended, section 3142(e) now states in pertinent part: "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the

---

[1] On April 30, 2003, the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, otherwise known as the "Protect Act," increased the penalties for many child exploitation offenses including the offenses for which defendant has been charged. *See* P.L. 108-21. However, Count 1 charges conduct committed on or about April 5, 2003, and therefore the old maximum period of incarceration is applicable.

5

judicial officer finds that there is probable cause to believe that a person committed . . . an offense involving a minor victim under sections . . . . 2252(a)(1), 2252(a)(2), 2252(a)(3) . . . of this title." The indictment alone is sufficient to establish probable cause. United States v. Dillon, 938 F.2d 1412 (1st Cir. 1991).

As a result of the rebuttable presumption, Defendant has the burden of production. While not a burden of persuasion, Defendant must ". . . come forward with evidence that he does not pose a danger to the community or a risk of flight. . . . Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered . . . ." United States v. Mercedes, 254 F.3d 433, 436 (2nd Cir. 2001) citing United States v. Rodriguez, 950 F.2d 85, 88 (2nd Cir. 1991) and United States v. Martir, 782 F.2d 1141, 1144 (2nd Cir. 1986).

Title 18, United States Code, Section 3142(g) outlines factors permitted to be considered by the judicial officer in determining whether to order pre-trial detention:

> . . . [I]n determining whether there are conditions of release that will reasonable assure the appearance of the person as required and the safety of any other person and the community, [the judicial officer shall] take into account the available information concerning–
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotic drugs;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole or on other

>
> release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

At the detention hearing ". . . the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information . . . . The facts the judicial officer uses to support a finding pursuant to subsection (e) . . . shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing." 18 U.S.C. §3142(f).

## V. ARGUMENT

Application of the law to the facts of this case establishes that Defendant, Darren F. Wilder, must be detained pre-trial because there are no conditions or combination of conditions that will reasonably assure the safety of the community and/or the appearance of Defendant as required.

    A.    <u>Defendant is a danger to the community</u>.

        1.    *Defendant is charged with the transportation, receipt and possession of child pornography which are "crimes of violence" and subject to the application of a rebuttable presumption in favor of detention.*

The three offenses with which Defendant is charged, all under Chapter 110, the sexual exploitation of children, fall with the definition of a "crime of violence." *See* 18 U.S.C. §3156(a)(4)(C). As a defendant charged with a "crime of violence," he is thus subject to a rebuttable presumption in favor of detention. *See* 18 U.S.C. §§3142(e) and (f)(1)(A).

  2. *The weight of evidence strongly supports the likelihood of conviction.*

Evidence of Defendant's criminal activity is overwhelming and comes from a variety of sources including independent evidence supporting his purchase of a subscription to a child pornography web site entitled "www.lust-gallery.com." In addition, as described above, the analysis of Defendant's computer (to which Defendant admits exclusive access) reveals the storage therein of hundreds of child pornography images, as well as evidence that he subscribed to dozens of child pornography related newsgroup, from which he downloaded hundreds of images of children engaged in sexually explicit conduct. The forensic analysis also establishes Defendant was actively trading images of child pornography via email with other persons.

  3. *Defendant's history and personal characteristics support detention in that he has exhibited, at a minimum, a sexual interest in children and the inability to conform his behaviors despite his prior conviction, incarceration, supervised release and counseling.*

*Character*: The evidence strongly suggests that Defendant is a man of poor character. He continued to act upon, and pursue his sexual interest in children, even after he was arrested, convicted, incarcerated, supervised and counseled for possessing child pornography.

*Employment*: Defendant has not been employed since May 28, 2004 when he was incarcerated pursuant to the judgment revoking his supervised release.

*Past conduct*: Interviews with Defendant's stepmother, Pam Wilder, and a former girlfriend, Lynne Cotreau, reveals that Defendant, as a teenager, sexually molested his stepsister when she was around four to six years of age. The molestation included forcing the little girl to perform oral sex upon him. This criminal conduct was not reported by either Defendant's father or stepmother. Cotreau also reported that she found a photograph in Defendant's home depicting

a close-up view of the crotch area of a young neighborhood girl (approximately three to four years of age) sitting on a porch in a dress, wearing underwear, with her legs spread apart.

*Criminal history*: As set forth above, Defendant was convicted for possession of child pornography and sentenced on November 9, 2000 to 27 months incarceration followed by two years of supervised release. Defendant admitted that he purchased a child pornography videotape advertised as part of a "sting operation" as illegal material containing sexually explicit images of a 12-year-old girl. At the time of the videotape delivery, law enforcement officers executed a search warrant on Defendant's residence which revealed he was in possession of fourteen computer disks containing graphic images of minors engaged in sexually explicit conduct. Defendant admitted to law enforcement officers at that time that he collected these images off the Internet over a period of several years.

*Supervised Release Status at Time of Current Offense*: Defendant committed the instant child pornography offenses while he was on supervised release from his prior child pornography conviction. In fact, Defendant's subscription to the lust-gallery web site was purchased only four months after his release from incarceration.

> 4. *Defendant has been charged with serious offenses and his ongoing, uncontrollable sexual interest in children poses a danger to the community.*

The Supreme Court has stated "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." United States v. Ferber, 458 U.S. 747, 757, 102 S.Ct. 3348, 3355 (1982). Further,

> [t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution

9

must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

Id. at 759. The Defendant's actions in transporting, receiving and possessing child pornography directly victimize the innocent children depicted in the images as well as the children who will be victimized in order to continue to meet the demand created by those having a sexual interest in children, like defendant. "The consumers of child pornography . . . victimize the children depicted by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." United States v. Norris, 159 F.3d 926, 929-930 (5th Cir. 1998), see also, United States v. Rodia, 194 F.3d 465 (3rd Cir. 1999). In addition, it has been noted:

> Unfortunately, the 'victimization' of the children involved [in the creation of child pornography] does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways. First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. . . . Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and innocent. . . . Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. . . . As Congress put it in explicit factual findings: '[T]he existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]' 1996 Act, §121, 110 Stat. at 3009-27. Id.

Many courts have recognized the connection between an offender collecting and possessing child pornography and acting on their implicit sexual interest in children. One court has noted ". . . child molestation and child pornography . . . plainly represent acts of 'similar

character' involving the extraordinary mistreatment of children. In fact, both Congress and the courts have acknowledged a link between these two offenses." United States v. Hersh, 297 F.3d 1233, 1242 (11th Cir. 2002) *citing* the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, §121, 110 Stat. 2009, *3009-26-27 (1996). In United States v. Hernandez, the court pointed out that the defendant himself ". . . admitted that his addiction to pornography was so strong, that he began to act out the visual depictions with minor females." 154 F.Supp.2d 240 (D.P.R. 2001). It has also been noted that ". . . it is common [for pedophiles] to continue their aberrant conduct even in the face of warnings." United States v. Cocco, 604 F.Supp. 1060 (M.D.P.A. 1985).

A study, conducted by Andres E. Hernandez, Psy.D. as director of the Sex Offender Treatment Program of the Federal Bureau of Prisons at Butner, revealed a correlation between those who collect child pornography and those who commit child sexual offenses. The study included 54 former Sex Offender Treatment Program inmates who were all convicted of child pornography offenses such as possession and distribution. The results revealed the following:

- 46% of the offenders initially appeared to have contact sexual crimes (PSI)[2];
- 79.6% of the offenders admitted to having prior contact sexual crimes after participation in the treatment program;
- 62 % of the offenders who had no documented contact sexual crimes (based on PSI) admitted to having undetected contact sexual crimes.

Andres. E. Hernandez, *Self-Reported Contact Sexual Offenses of Federal Inmates Convicted of Child Pornography Offenses* (2000).

---

[2] PSI refers to the pre-sentence investigation.

11

B. <u>Based on the seriousness of the charges and the severity of the penalty, Defendant poses a risk of flight</u>:

The severity of punishment is a factor this Court must consider in assessing Defendant's risk of flight. <u>United States v. Castiello</u>, 878 F.2d 554 (1st Cir. 1989). Defendant is facing a mandatory period of incarceration of 15 years if convicted on Count 2 of the second superseding indictment and up to a maximum of 40 years on Count 1. As briefly set forth above, there is substantial credible evidence of these crimes, and a conviction is highly probable. Given the weight of the evidence for the current charges and the statutorily mandated incarceration period, Defendant may well view flight as his only option to avoid a lengthy federal prison sentence. Moreover, he is not employed and no longer has a home.

## VI. CONCLUSION

There is probable cause to believe Defendant committed the serious offenses of possessing, receiving and transporting child pornography and therefore a rebuttable presumption exists that no condition or combination of conditions can reasonably ensure the safety of the community and Defendant's appearance at all proceedings.

Defendant has a history of pedophilia dating back to his teenage years. As an adult, he was arrested in a sting operation purchasing child pornography. Despite being convicted and serving two years in federal prison for that conduct (which included treatment in a sex offender's program) he continues to be incapable of controlling his sexual interest in children. This is clearly demonstrated by the proffered evidence before this Court including that Defendant sought out and obtained, within four months of his release from incarceration, images of minors engaged

in sexually explicit conduct. Defendant now faces a mandatory minimum prison sentence of 15 years.

Based on the foregoing, Defendant should be detained pending trial as he poses a danger to the community and is a risk of flight.

Respectfully submitted,
Michael J. Sullivan
United States Attorney
District of Massachusetts

By: _____
Sherri A. Stephan, Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1400 New York Avenue, NW, 6th Floor
Washington, D.C. 20005
202-353-4438

## CERTIFICATE OF SERVICE

I, Sherri A. Stephan, hereby certify that on this 25th day of February, 2005, a true copy of the foregoing Motion for Pretrial Detention was served by sending it by Federal Express, tracking number 8499 8555 4088 upon:

Peter C. Horstmann, Esquire
Partridge, Ankner & Horstmann, LLP
200 Berkeley Street, 16th Floor
Boston, MA 02116

_____
Sherri A. Stephan, Trial Attorney, USDOJ