UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10217-GAO

UNITED STATES OF AMERICA

v.

DARREN F. WILDER,
Defendant

MEMORANDUM AND ORDER
May 6, 2005

O'TOOLE, D.J.

The defendant, Darren Wilder, has been charged in a three-count indictment with transportation, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(1), (2), and (4)(B). Wilder has moved to suppress evidence seized during the execution of a search warrant at his home, arguing that the warrant was defective because the supporting affidavit was insufficient to support the Magistrate Judge's probable cause determination. He also seeks a hearing, pursuant to Franks v. Delaware, 438 U.S. 154 (1978), arguing that the affiant omitted and misrepresented material information in the warrant application. For the reasons set forth below, Wilder's motion to suppress and his request for a Franks hearing are denied.

I.  **Background**

Colleen Forgetta, a Special Agent with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement, provided an affidavit in support of the application for a warrant to search Wilder's home. Among other things, Agent Forgetta's affidavit offered the following information:

"[B]etween December 1999 and January of 2000, Wilder, using a computer, arranged to purchase through an undercover website a videotape containing child pornography." Forgetta Aff. ¶ 38. At the time the video was delivered to Wilder, law enforcement officers executed a search warrant at Wilder's residence and seized fourteen computer disks containing images of child pornography. Id. "Wilder admitted to law enforcement officers at that time that he collected these images off the Internet over a several year period of time." Id. On November 9, 2000, in the case of United States v. Wilder, Docket No. 00-cr-10146-PBS, Wilder pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and was sentenced to 27 months incarceration followed by two years of supervised release. Id. Wilder served his sentence and began serving his term of supervised release on November 1, 2002. Id. ¶ 39.

At some point, several federal law enforcement agencies conducted a joint investigation of a billing and credit card aggregating company named Regpay. Id. ¶ 13. The investigation revealed that Regpay conspired with certain website operators to distribute child pornography commercially via the Internet. Id. During the course of the investigation, federal agents were able to analyze Regpay's corporate records and identify tens of thousands of subscribers to websites that provide access to child pornography. Id. ¶ 17. Ultimately, federal agents determined that a person, using a Verizon email address and credit card that had been issued to Wilder, had, on March 15, 2003, purchased a subscription to a members-only website called www.lust-gallery.com. Id. ¶ 28-29.

Investigating agents determined that the lust-gallery website permitted members to gain access to child pornography. Specifically, on March 26, 2003, eleven days after the person using Wilder's e-mail address and credit card had subscribed, an undercover agent purchased a one-month subscription to the lust-gallery website. Id. ¶ 31. The agent then accessed the site and downloaded

images of child pornography.  Id.  On July 24, 2003, another undercover agent purchased a one-month subscription to the lust-gallery website.  Id. ¶ 32.  This agent also accessed the site and downloaded images of child pornography.  Id.

Prior to subscribing to the website, prospective purchasers could view a preview page which advertised what members could see and access if they subscribed.  Agents preserved the preview page of the website from March 26, 2003.  Id. ¶ 34.  Agent Forgetta's affidavit describes the preview page:

> The top of the page states "LUST GALLERY - a Secret Lolitas Archive".  It is followed by text stating: "That you're here means you're a member of one of the sites created by RedStudio.  This website was developed exclusively for our members and will never be revealed to the general public.  Because you were a subscriber before, we know what you like and need.  And we're here to give EXACTLY the things you like EXACTLY the way you like them."  This text is followed by thumbnail photos appearing one after the other across the width of the screen.  Each image shows at least two unclothed minors with some images focused on the minor's genitalia.  After the first row of images further text appears and states "Lust Gallery contains thousands of EXCLUSIVE images never published before.  Moreover, inside we have something THAT HAS NEVER BEEN SHOWN BEFORE UNTIL NOW!"  This text is followed by another paragraph stating: "All models inside are 14 or younger, every image shows at least 2 or 3 girls, every gallery is at least 50 images.  Currently we have over 3500 high quality digital photos in over 40 sets.  The collection is updated weekly so there is always something new for you to enjoy.  Created by real young model lovers for real young model lovers.  Lust Gallery is truly an elite product.  We guarantee you complete satisfaction for a truly unforgettable experience."  This text is followed by another row of thumbnail images going across the width of the screen.  Each image shows at least two unclothed minors with some images focused on the minor's genitalia.  Further text follows these images.

Id. ¶ 34.

After identifying Wilder as a target for investigation, agents learned of his prior conviction and supervised release and contacted his probation officer.  The probation officer told them that, during visits to Wilder's house in November and December 2003, he had observed a desktop computer in a spare room and a laptop computer inside his house and in his pickup truck.  Id. ¶ 40.

3

The probation officer also reported that Wilder has Internet access at home, uses his computer to work from home, and uses his laptop computer when he travels for business. Id.

Agent Forgetta's affidavit also provided a description of the characteristics found by experience to be common to collectors of child pornography, such as their tendency to collect such material, keep it in a private, secure location such as their homes, retain it for many years, and rarely destroy it. Id. ¶ 46. The affidavit also described the role that computers play in the distribution and collection of child pornography. Id. ¶ 11.

Agent Forgetta submitted that the foregoing information justified the conclusion that probable cause existed to believe that evidence of the offenses of receiving and possessing computer-delivered images of child pornography would be found at the premises sought to be searched. Id. ¶ 47. A Magistrate Judge granted the search warrant application, and federal agents searched Wilder's home and vehicle and seized two desktop computers, on which they found child pornography, providing the basis for the present indictment.

II.  **Discussion**

Wilder has moved to suppress the evidence seized during the execution of the search warrant. In sum, Wilder makes two arguments – first, that the information in the affidavit was insufficient to establish probable cause in support of issuance of the search warrant and, second, that material information was misrepresented in or omitted from the search warrant application.

    A.  **Probable cause**

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "A warrant application must demonstrate probable cause to believe that (1) a crime has been

committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). The First Circuit has described the following standard with respect to the burden to satisfy the probable cause requirement:

> "'[P]robable cause need not be tantamount to proof beyond a reasonable doubt. . . . Probability is the touchstone.' The probable cause standard does not require any showing that an officer's belief that evidence will be found in the searched premises 'be correct or more likely true than false.' Rather, probable cause to search [a suspect's] home existed so long as the [supporting] Affidavit contained information showing a 'fair probability' that evidence of a crime would be found there."

United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000) (citations omitted).

The duty of the magistrate who issues a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (reaffirming and applying the "totality of the circumstances" test). In doing so, the magistrate may draw reasonable inferences from the facts alleged in the affidavit. United States v. Hershenow, 680 F.2d 847, 852 (1st Cir. 1982). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39 (alterations in original, citation and internal quotation marks omitted).

Wilder makes a number of arguments in support of his contention that the commission element of the probable cause requirement was not satisfied. He argues that there was no evidence offered in the affidavit that he ever downloaded or possessed any images of child pornography from the website. He argues that his mere subscription to the website is insufficient to establish those facts

by inference, because his subscription permitted him to view the images without downloading them. Moreover, as to his receipt or possession of images from the website, he points out that the website apparently contained matter that was not child pornography, such as adult pornography and images of children that do not meet the definition of child pornography. Wilder's arguments, considered individually and together, are unconvincing.

In focusing only on the holes, Wilder ignores the cheese. He is right about what the affidavit does not say; but he omits to address what it does say. Here is what it told the magistrate: Wilder is a convicted possessor of child pornography. He has obtained and retained such materials in the recent past, and it is fairly inferable that the temptation to acquire it may well persist for him. Evidence that it indeed persists is supplied by his paid subscription to a website where child pornography may be obtained. The affidavit establishes that before subscribing, a viewer is tantalized by the advertisement of the availability of child pornography through the subscription. That other material, not child pornography, may also be available is not important. First, other material is not featured in the way that child pornography is. Moreover, for purposes of the probable cause determination, it was not necessary to prove definitively what specific materials were received or possessed, only that there was a "fair probability" that Wilder received or possessed child pornography. The preview page said, in essence, if you subscribe, we'll provide you with images of child pornography. Wilder subscribed. The magistrate was certainly entitled to infer that in doing so, Wilder intended to obtain, and did obtain, access to the advertised commodity.

The affidavit also provided information about the perceived habits of collectors of child pornography in general. The earlier conviction and the evidence assembled in connection with that case established Wilder as a recent collector. According to the affidavit, collectors in general use

6

computers, and particularly access to the Internet, to obtain images of child pornography which they then download and save, maintaining a collection in both electronic and hard-copy formats. When he was previously discovered to have a collection of child pornography, Wilder, consistent with the general pattern, had been found to possess computer disks containing child pornography which he acknowledged he had downloaded from the Internet. Id. ¶ 38. This information supplied by the affidavit permitted the magistrate fairly to infer not only that it was probable that Wilder had committed a criminal offense, but also that it was probable that execution of the search warrant applied for would yield evidence of the crime in the form of computer images and perhaps other copies of child pornography. See Feliz, 182 F.3d at 87-88 (evidence that, among other things, defendant was a "long-time, successful, drug trafficker" supported inference that incriminating evidence would be found at his apartment). See also United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) ("An affiant's knowledge of the target's prior criminal activity or record clearly is material to the probable cause determination."). It was not necessary to establish probable cause for Agent Forgetta to provide specific proof of one or more instances of downloading, as Wilder apparently contends, where the information presented indicated that collectors typically download and that Wilder himself had a history of doing so.

Wilder's subscription to the lust-gallery website was in March 2003. The warrant was applied for in January 2004. Wilder argues that because ten months had passed between the evidence of his access to child pornography and the application, the government had not sufficiently shown that it was likely evidence of any crime resulting from such access would be found when the warrant was executed. Whether information offered in support of a warrant application is too "stale" to support an inference that fruits of the offense will be found depends overwhelmingly on the particular factual

7

circumstances. If the evidence or contraband described is either easily movable, like a firearm, or consumable, like drugs, the information about its presence in a particular location has a very short shelf life. The affidavit here indicated, however, that collectors of child pornography obtain and save images via the Internet *so that they can keep them.* See Aff. ¶ 46. The inference that a search in January 2004 would yield evidence of images from Wilder's March 2003 access to the lust-gallery website was, in the circumstances, a fair one.

Wilder cites a number of cases in support of his argument that probable cause was lacking. It is not necessary to address each of those cases in detail. It is sufficient to say that Wilder has not cited any case that presents an adequate analogy to the facts of this case. On the contrary, each of the cases he cites involves facts that are materially different from those presented here.

Ultimately, the Magistrate Judge was required to make a common sense determination, based on the totality of circumstances described in the supporting affidavit, whether there was a fair probability that evidence of a crime or contraband would be found on the computers in Wilder's home and vehicle. Having considered the supporting affidavit and the parties' submissions on the defendant's motion to suppress, I conclude that the affidavit adequately supported the finding of probable cause to issue the warrant.

  B. **Alleged misstatements and omissions**

Wilder also argues that, pursuant to the Supreme Court decision in Franks v. Delaware, 438 U.S. 154 (1978), he is entitled to a hearing to challenge the validity of the search warrant application because material information was omitted from and misrepresented in Agent Forgetta's affidavit.

"An affidavit submitted in support of a search warrant application is presumed valid." Grant, 218 F.3d at 77. Nevertheless, that presumption may be rebutted, and "[a] Franks hearing is

warranted where the defendant makes a substantial preliminary showing that (1) a false statement, (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (citation and internal quotation marks omitted). "A material omission of information may also trigger a Franks hearing." United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002). "To prove reckless disregard for the truth, the defendant must prove that the affiant in fact entertained serious doubts as to the truth of the allegations," and the affiant's "[r]ecklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." Ranney, 298 F.3d at 78 (internal quotations and citations omitted).

In support of his request for a Franks hearing, Wilder asserts that Agent Forgetta recklessly omitted from the affidavit the facts that Wilder had the option of viewing images without downloading them, Wilder had the option of viewing adult pornography or other legal material, and Wilder's subscription was for only one month and expired at the end of that month. Wilder also asserts that Agent Forgetta provided a materially insufficient (and consequently misleading) description of the contents of the website to which Wilder had subscribed. In particular, Wilder complains that Agent Forgetta's description failed to disclose that the website did not focus on child pornography to the exclusion of legal content such as adult pornography.

Wilder has not shown that the affidavit was misleading with regard to the period of Wilder's subscription. The affidavit indicates that the federal investigators had evidence that Wilder had purchased a subscription to the website for $57.90 in March 2003. Wilder has not suggested that that assertion was false. The affidavit further indicates that two federal agents purchased "one-month membership[s]" for $49.95 plus fees and $57.90, respectively. There is no assertion that Wilder's

9

subscription continued or was renewed. The failure to affirmatively state that Wilder's subscription expired after one month was not misleading given the information concerning the period of the subscriptions purchased by the federal investigators.

With respect to Agent Forgetta's description of the content of the website, Wilder has not shown that it was false or misleading. First, the statements in the affidavit submitted by Wilder's attorney in support of the motion to suppress concerning what the website "currently contains" does not, by its own terms, provide information about the content of the website at the time that Wilder and the federal agents had subscribed. Further, the unsupported statement in Wilder's attorney's affidavit concerning the determinations of an unidentified defense expert is not sufficient to make a substantial showing that Agent Forgetta's affidavit was false or misleading.

Finally, the failure of the affidavit to state that Wilder could view images without downloading them was not a materially false or misleading omission. First, the affidavit in no way suggests that the opposite is true, that is, that Wilder could not view the images without downloading them. Further, as previously indicated, the absence of evidence of actual downloading is not fatal to the probable cause determination, in light of the totality of the circumstances described in the affidavit.

C.  **Good faith exception**

Even if the Magistrate Judge's probable cause determination was erroneous, Wilder's motion to suppress would be denied under the good faith exception to the probable cause requirement.

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Leon, 468 U.S. 897, 926 (1984). "The Leon Court held that, in most cases, a

warrant's invalidity should not serve to suppress the fruits of the subsequent search when the officer acted in objective good faith in executing the warrant." United States v. Robinson, 359 F.3d 66, 69 (1st Cir. 2004). "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Leon, 468 U.S. at 922. "If . . . the warrant's defectiveness results from . . . borderline calls about the existence of probable cause, see Leon, 468 U.S. at 926 . . . (favoring non-exclusion in situations where the warrant is based on 'evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause'), then the evidence may be used, despite the warrant's defectiveness." United States v. Ricciardelli, 998 F.2d 8, 15 (1st Cir. 1993).

Here, aside from the assertion that the search warrant was not supported by probable cause, there is not the slightest evidence that the Magistrate Judge had "abandoned his detached and neutral role." Likewise, there is no evidence that Agent Forgetta was dishonest or reckless in seeking the search warrant. Rather, the evidence supports the conclusion that Agent Forgetta acted with objectively reasonable good faith in believing that the search warrant was supported by probable cause. Even if the law concerning the quantum of evidence that is required to support the issuance of a search warrant under circumstances such as these is unsettled – as perhaps indicated by the disparate circuit and district court cases from across the country cited by the parties – the uncertainty works against a conclusion that good faith was lacking.

III.   **Conclusion**

The defendant's motion to suppress evidence and request for a Franks hearing are denied.

It is SO ORDERED.

| | |
|---|---|
| May 6, 2005 | George A. O'Toole, Jr. |
| DATE | DISTRICT JUDGE |