UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 OCT 19  P 4: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA   )
                           )   Criminal No. 04-10217-GAO
v.                         )
                           )
DARREN F. WILDER           )
                           )

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR PRODUCTION OF DISCOVERY AND REQUEST FOR AN ORDER OF PROTECTION

The United States of America, by and through undersigned counsel, hereby opposes Defendant Darren F. Wilder's Motion pursuant to Rule 16(a)(1)(E) for production to defense counsel and to a civilian defense expert an image of the computer hard drive and all Encase files in the above-captioned matter and requests this Court issue an Order of Protection pursuant to Rule 16 (d)(1).

The United States submits that the items requested contain contraband visual depictions of minors engaging in sexually explicit conduct. As discussed below, the defendant makes no compelling argument to justify turning over contraband to defense counsel, much less a civilian expert. Like other items of contraband, it is appropriate for these items to be reviewed at a law enforcement agency and not disseminated further.

1

**Relevant Facts**

The present investigation revealed that on or about March 15, 2003, Defendant used his computer and the email address vzelkk2n@verizon.net, to purchase a subscription to the website www.lust-gallery.com (hereinafter lust-gallery), which contained child pornography.

The investigation further revealed that prior to purchasing a membership to lust-gallery potential customers view a preview page. The lust-gallery preview page describes the site's content as "a secret lolitas archive." The text on the page states, *inter alia*,

> [t]hat you're here means you're a member of one of the sites created by RedStudio. This website was developed exclusively for our members and will never be revealed to the general public. Because you were a subscriber before, we know what you like and need. And we're here to give EXACTLY the things you like EXACTLY the way you like them.

This text is followed by thumbnail photos appearing one after the other across the width of the screen, each of which depicts at least two unclothed minors with some images depicting their genitalia. Below the first row of images, additional text states "Lust Gallery contains thousands of EXCLUSIVE images never published before. Moreover, inside we have something THAT HAS NEVER BEEN SHOWN BEFORE UNTIL NOW!" The above-referenced text is followed by another paragraph stating:

> All models inside are 14 or younger, every image shows at least 2 or 3 girls, every gallery is at least 50 images. Currently we have over 3500 high quality digital photos in over 40 sets. The collection is updated weekly so there is always something new for you to enjoy. Created by real young model lovers for real young model lovers. Lust Gallery is truly an elite product. We guarantee you complete satisfaction for a truly unforgettable experience.

This text is followed by another row of thumbnail images across the width of the screen. Again, each image shows at least two unclothed minors with some images depicting the minor's genitalia.

A search warrant was obtained for Defendant's residence on January 14, 2004 and executed on January 15, 2004. Two hard drives were among the items seized in the search. The hard drives were analyzed by Forensic Agent Mike Howard of the Bureau of Immigration and Customs Enforcement and Computer Forensic Specialist Lam Nguyen of the High Technology Investigative Unit of the United States Department of Justice, Child Exploitation and Obscenity Section. The analysis revealed that Defendant possessed hundreds of images of children engaged in sexually explicit conduct and that he subscribed to dozens of child pornography related newsgroups including downloading hundreds of child pornography images.

The computer analysis also revealed Defendant repeatedly accessed child pornography related websites such as: www.childlove.org, www.toplolitas.org, www.teenpictures.org, www.youngdesires.net, www.nake-teenage-girls.com, www.lolitas-nude-oung.com, www.nude-lolita-teens.com, www.lolitaarchives.com and www.preteen-pages.com/secret.

In addition, a newsgroup posting from springbegins@hotmail.com dated April 1, 2003 was found on Defendant's computer. The posting requests images of children between the ages of eleven and sixteen to trade. On April 4, 2003, Defendant sent an email to springbegins@hotmail.com and attached four images depicting a young child engaged in

sexually explicit conduct. In the text part of the message Defendant wrote "now its your turn."

At the time of the search warrant execution, Defendant spoke to law enforcement agents. He stated, in part, that he liked teenage girls. He admitted to being "enticed" by certain Internet cites and to lying to his probation officer about using the Internet to access child pornography.

**Argument**

The Defendant has moved for an Order pursuant to Rule 16(a)(1)(E) requiring the United States to produce to his counsel and to a civilian expert witness an image of the hard drive of the Defendant's computer seized as evidence in this case and the Encase files created during the forensic analysis of that hard drive. The United States opposes this Motion because all of the items requested contain contraband visual depictions of minors engaging in sexually explicit conduct, and the Defendant has failed to state a compelling reason why the contraband should be delivered to defense counsel and a civilian expert witness rather than viewed at their leisure, taking as much time as reasonable at the offices of the Bureau of Immigration and Customs Enforcement.

Federal Rules of Criminal Procedure, Rule 16 addresses the Government's requirements concerning disclosure of evidence during discovery. Federal Rule 16(a)(1)(C) provides, in pertinent part, as follows:

4

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph . . . photographs . . . which are within the possession, custody, or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belonged to the defendant.

In this case, the Government is in possession of a hard drive containing computer image files which are subject to this Rule. The Defendant has not articulated to the government a legitimate particularized need to possess this material, including image files which depict child pornography, as opposed to having a reasonable opportunity to review them. All of the image files seized in this investigation have been and continue to be available to the Defendant's counsel and his expert for review. The Government has declined the Defendant's request to provide copies of these images and now requests the Court issue a protective order pursuant to Federal Rule 16(d)(1).

> Federal Rule 16(d)(1) provides, in pertinent part, as follows:
> Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate.

Because of the compelling public policy against the sexual exploitation of children which occurs with the distribution of child pornography, and because child pornography is contraband, it is the Government's position that an order restricting access by the defense counsel to the child pornography at issue in this case should be issued pursuant to Rule 16(d)(1). That order should restrict defense counsel to a reasonable review of the image files in the offices of Government counsel.

5

There is little question that there is a compelling public policy against the sexual exploitation of children in child pornography. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 755 (1982). This policy is so strong that child pornography generally lies outside the protection of the First Amendment. "Child pornography is not presumptively protected by the First Amendment; it is almost completely outside its protection." United States v. Wiegand, 812 F.2d 1239, 1242 (9th Cir. 1987)(citing to Ferber, 458 at 763).

"It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling." Osborne v. Ohio, 495 U.S. 103, 109 (1990). The Supreme Court has found that the judgment of the legislature and as found in the relevant literature is that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Ferber, 458 U.S. at 758. This judgement "easily passes muster under the First Amendment." Id. In addition, the child suffers "psychological harm," Id. at 775 (O'Conner, J., concurring) and an invasion of the child's "vulnerability.' Id. at 776 (Brennan, J., concurring). "These harms collectively are the consequential damages that flow from the trespass against the dignity of the child." Weigand, 812 F.2d at 1244.

The distribution of child pornography is related to the sexual abuse of children because it is "a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Ferber, 458 U.S at 759. Child pornography violates the children involved by

exploiting and damaging the child at the time the child participates in sexual activities while a permanent visual depiction is being made. Osborne, 495 U.S. at 109. The child is then exploited and violated again when those visual depictions are distributed and viewed by others. Id. at 111. ("The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come.")

To permit the distribution of child pornography by allowing the Defendant's counsel an exact copy of the computer hard drive and Encase files would be to condone the continued exploitation of the child depicted in the image files contained therein. This plainly goes against the reasoning of the Supreme Court and the legislature whose goal it was to lessen the harm to the child and protect the child from any further abuse. "The victim's knowledge of publication of the visual material increases the emotional and psychic harm by the child . . . Thus, distribution of the material violates the individual interest in avoiding disclosure of personal matters." Ferber, 458 U.S. at 759, n. 10 (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)).

In addition, the image files depicting child pornography at issue in this case are illegal contraband. In United States v. Kimbrough, the Fifth Circuit declined to find that Rule 16 provides that such contraband can be distributed to, or copied by, the defense. United States v. Kimbrough, 69 F.3d 723, 731 (5th Cir. 1995). In that case, the Government offered to make the materials available for inspection by the defense at the offices of the Government, but did not allow the materials to be copied. The Court found this action by the Government to be reasonable. Id.

7

In United States v. Horn, 187 F.3d 781 (8th Cir., 1999), the defendant challenged the district court's denial of his motion, under Rule 16(a)(1)©, to "have copies of the video tapes [containing child pornography] that were going to be used against him at trial so that any expert witness that he might procure could see and evaluate them." Horn, 187 F.3d at 792. The Eight Circuit upheld the district court's action and in so doing, explaining its holding as follows:

> The trial court denied the motion, holding, inter alia, that the government's officer to allow Mr. Horn's expert to view the tapes would accomplish the same object that Mr. Horn sought; and, indeed, Mr. Horn does not show how he was prejudiced by the trial court's ruling. We note, too, that Fed.R.Crim.P. 16(d)(1) provides that '[u]pon a sufficient showing the court may at any time order that the discovery of inspection be denied, restricted, or deferred.' We think that the restriction that the trial court imposed here, given the fact that the tapes were prima facie contraband, was authorized by the relevant rule.

Id. (emphasis added) *see also* United States v. Husband, 246 F.Supp.2d 467, 468-69 (E.D.Va. 2003)(government's offer to make videotape containing child pornography available for inspection, but not for copying, did not violate due process); United States v. Cox, 190 F.Supp.2d 330, 334 (N.D.N.Y. 2002)(denying defendant's motion for a protective order requiring government to provide him with copies of physical evidence including child pornography).

In the case *sub judice*, the Government has repeatedly offered to make the computer evidence available for review at the offices of the Government, and this is a reasonable offer.

The issue of whether to provide defense counsel access to contraband has come up repeatedly in cases where the defendant has been indicted for narcotics offenses.

8

Those districts which have decided the issue are of the view that any independent testing or analysis of the alleged controlled substance requested by defense counsel should be conducted under the supervision of Government agents or of the court.

In United States v. Butler, the Fifth Circuit vacated and remanded an appellant's conviction because the district court refused to grant his motion to compel the Government to produce samples of the alleged cocaine base and therefore no independent analysis of the substance had occurred. United States v. Butler, 988 F.2d 537, 543 (5th Cir. 1993). The Court stated, however, that upon remand, "[t]he testing shall be under the control and supervision of the district court." Id.

The Fifth Circuit again visited this issue in United States v. Dukes. In that case, the Court agreed with the lower court which stated that the Government had fulfilled all of its discovery obligations when it "agreed to permit [the defendant] to test the cocaine base subject only to compliance with Drug Enforcement Agency safekeeping procedures and offered to discuss with his counsel 'the mechanics of how to do it.'" The Court found that the appellant could have had the sample of the alleged cocaine base if he had complied with the DEA procedures for doing so, and because he did not make any attempt to comply with the procedures, the lower court did not abuse its discretion in denying his motion for a new trial. United States v. Dukes, 139 F.3d 469, 476 (5th Cir. 1998).

The issue of providing defense counsel with access to alleged controlled substances has been decided in the Federal district courts in several states. In <u>United States v. Noel</u>, the Western District of Tennessee stated that although the defendant was entitled to an opportunity to test and analyze the alleged controlled substance, "if the tests cannot reasonably be made in the offices of the United States, the government shall provide a minimum sample to defense counsel" but that "[t]he government may have an agent accompany the sample while in the possession of defense counsel or the expert." <u>United States v. Noel</u>, 708 F. Supp. 177, 178 (W.D. Tenn. 1989).

Further, when a defendant indicted for unlawfully selling and distributing depressant or stimulant drugs requested that he be provided all "tangible objects . . . within the possession of the Government," as provided for in Rule 16(a)(1)©, the Eastern District of Illinois directed that the inspection of the drugs be made "in the presence of a government agent." <u>United States v. Reid</u>, 43 F.R.D. 520, 522 (N.D. Ill. 1967).

Finally, in finding that the defendant was entitled to inspect and analyze the alleged narcotic drugs, the Southern District of New York commanded that "[t]his inspection and analysis must be made at the office of the government's chemist . . . subject to reasonable safeguards, and under the government's supervision." <u>United States v. Bentvena</u>, 193 F. Supp. 485, 498 (S.D.N.Y. 1960).

In support of his position Defendant has argued production is necessary for the following reasons:

1) Set up and conducting the necessary tests will take two full days;

2) Defense counsel will not be able to consult freely with the expert witness;

3) The expert witness will not be able to conduct extended examinations, which may require repetition. (See Defendant's Motion page 2).

These are not compelling, legitimate, particularized reasons to turn over contraband. If Defendant's defense counsel and expert witness need two full days or more to complete their analysis, this can certainly be arranged and has been repeatedly offered. There is nothing preventing Defendant's counsel and the expert witness from consulting as often and as freely as they desire even if the examination is being conducted in a law enforcement facility. In addition, once again, if the expert witness needs to repeat his exam, or conduct further tests, he is free to do so in a law enforcement facility. Once again, the Government has and continues to be ready, willing and able to provide the necessary facility and required time access to the contraband materials at issue.

## Conclusion

For the reasons set forth above, the United States respectfully requests that the Court deny defendant's Motion for Production of Discovery and issue an Order of Protection pursuant to Rule 16(d)(1) limited review of evidence containing contraband to the appropriate law enforcement offices.

MICHAEL SULLIVAN
United States Attorney

*Sherri A. Stephan* By JL
SHERRI A. STEPHAN
Trial Attorney, CEOS
U.S. Department of Justice
1400 New York Avenue, NW, 6th Floor
Washington, D.C. 20005
202-353-4438
Sherri.Stephan@usdoj.gov

Dated: October 19, 2005