IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DARREN F. WILDER )<br>)<br>Defendant )<br>_____) | Criminal No. 04-10217-GAO |

**GOVERNMENT'S MOTION *IN LIMINE* PURSUANT TO
FEDERAL RULES OF EVIDENCE 404(b)**

The United States of America, by and through its counsel, Michael J. Sullivan, United States Attorney for the District of Massachusetts, Assistant United States Attorney Dana Gershengorn and Sherri A. Stephan, Trial Attorney, United States Department of Justice, Criminal Division, Child Exploitation and Obscenity Section, hereby moves this Court pursuant to Federal Rule of Evidence 404(b) to admit into evidence Defendant's prior conviction for possessing child pornography including the underlying facts supporting his conviction.

**I. PRELIMINARY STATEMENT**

The Government seeks to introduce evidence at Defendant's trial of his prior conviction for possessing child pornography in order to show Defendant's intent, knowledge, lack of mistake or accident and motive. Defendant's prior conviction has "special relevance" and is probative of the offenses for which he is now accused and the probative value of the evidence is not outweighed by any potential prejudicial impact.

1

## II. PROCEDURAL HISTORY

After pleading guilty to possession of child pornography in November of 2000, Defendant was sentenced to 27 months incarceration followed by 24 months of supervised release. On November 2, 2002, he was released from incarceration and placed on supervised release. On February 18, 2004, Defendant was arrested for violating his supervised release. At the resulting hearing, the Honorable Judge Patti B. Saris entered a judgment of revocation based on two findings: that Defendant committed another criminal offense while under supervision (the offenses now before this court) and that he failed to truthfully answer all inquiries and follow the instructions of his probation officer. Based on these findings, Judge Saris re-incarcerated Defendant for an additional 13 months. Defendant completed his sentence on March 3, 2005.

On July 21, 2004 Defendant was indicted on three federal criminal offenses involving the transportation, receipt and possession of child pornography. The indictment was based, in part, upon acts that resulted in his supervised release violation. A second superseding indictment was returned on February 2, 2005 which maintained the substantive offenses. Defendant's trial is currently scheduled for March 13, 2006.

## III. SUMMARY OF CASE

Defendant, Darren F. Wilder is a 34-year-old male who, prior to being incarcerated for violating his supervised release, resided alone at 5 Valley Road, Dracut, located in the District of Massachusetts. The present investigation revealed that on or about March 15, 2003, Defendant used his computer and the email address vzelkk2n@verizon.net, to purchase a subscription to the website www.lust-gallery.com (hereinafter lust-gallery), which contained child pornography.

The investigation further revealed that prior to purchasing a membership to lust-gallery potential customers view a preview page. The lust-gallery preview page describes the site's content as "a secret lolitas archive." The text on the page states, *inter alia*,

> [t]hat you're here means you're a member of one of the sites created by RedStudio. This website was developed exclusively for our members and will never be revealed to the general public. Because you were a subscriber before, we know what you like and need. And we're here to give EXACTLY the things you like EXACTLY the way you like them.

This text is followed by thumbnail photos appearing one after the other across the width of the screen, each of which depicts at least two unclothed minors with some images depicting their genitalia. Below the first row of images, additional text states "Lust Gallery contains thousands of EXCLUSIVE images never published before. Moreover, inside we have something THAT HAS NEVER BEEN SHOWN BEFORE UNTIL NOW!" The above-referenced text is followed by another paragraph stating:

> All models inside are 14 or younger, every image shows at least 2 or 3 girls, every gallery is at least 50 images. Currently we have over 3500 high quality digital photos in over 40 sets. The collection is updated weekly so there is always something new for you to enjoy. Created by real young model lovers for real young model lovers. Lust Gallery is truly an elite product. We guarantee you complete satisfaction for a truly unforgettable experience.

This text is followed by another row of thumbnail images across the width of the screen. Again, each image shows at least two unclothed minors with some images depicting the minor's genitalia.

A search warrant was obtained for Defendant's residence on January 14, 2004 and executed on January 15, 2004. Two hard drives were among the items seized in the search. The hard drives were analyzed by Forensic Agent Mike Howard of the Bureau of Immigration and

Customs Enforcement and Computer Forensic Specialist Lam Nguyen of the High Technology Investigative Unit of the United States Department of Justice, Child Exploitation and Obscenity Section. The analysis revealed that Defendant possessed images of children engaged in sexually explicit conduct and that he subscribed to child pornography related newsgroups including downloading hundreds of child pornography images.

The computer analysis also revealed Defendant repeatedly accessed child pornography related websites such as: www.childlove.org, www.toplolitas.org, www.teenpictures.org, www.youngdesires.net, www.nake-teenage-girls.com, www.lolitas-nude-oung.com, www.nude-lolita-teens.com, www.lolitaarchives.com and www.preteen-pages.com/secret.

In addition, a newsgroup posting from springbegins@hotmail.com dated April 1, 2003 was found on Defendant's computer. The posting requests images of children between the ages of eleven and sixteen to trade. On April 4, 2003, Defendant sent an email to springbegins@hotmail.com and attached four images depicting a young child engaged in sexually explicit conduct. In the text part of the message Defendant wrote "now its your turn."

At the time of the search warrant execution, Defendant spoke to law enforcement agents. He stated, in part, that he liked teenage girls. He admitted to being "enticed" by certain Internet cites and to lying to his probation officer about using the Internet to access child pornography.

## IV. DEFENDANT'S PRIOR CONVICTION

Defendant was arrested in the District of Massachusetts in 2000 and charged with possessing child pornography. He entered a plea of guilty in November of 2000 and served 24

months incarceration in a federal correctional facility.  The underlying facts in support of this conviction show that Defendant obtained possession of child pornography through the use of a computer *via* the Internet from his residence.

One of the ways in which Defendant attempted to obtain child pornography was through newsgroups.  Defendant responded to a newsgroup posting on the "Lolyta pre-teen incest Hc pics" newsgroup.  The posting was part of an undercover operation being conducted by the United States Postal Inspection Service in cooperation with the Beaufort, South Carolina Police Department.  The posting indicated the availability of "some great incest tapes for sale" and that the newsgroup posting's author could ". . . accommodate both gender and age preference."  On November 24, 1999, Defendant responded to this newsgroup posting indicating that he ". . .saw [the] posting and wanted more infor on the vids . . . available."  On November 25, 1999, an undercover agent responded to Defendant's email as follows:

> Before I send you my catalog I want to be very frank and honest with you.  What I've got (and what I enjoy viewing) is very rare, forbidden, and ILLEGAL material.  I have tried to be very discreet because of my profession and the fact that I like to keep my private life very private.  I wanted you to know these things up front because if you treat this lightly or if you're just curious.  SO PLEASE BE DISCREET!!!
>
> My primary interest is to expand my collection of pron [sic] photos, magazines, and videos (commercial and homemade).  I have and swap the following types of videos: bondage, shower, pets, and vegetables, underage, and other "hard to find" items, and underage means under 18 (teens and some pre-teen / not actors made to look young).  I have some Amsterdam/Europeans segments (both boy/boy – girl/girl, boy/girl) also underage and some "homemade stuff" I acquired.
>
> This is to also certify that I am NOT a law enforcement officer or an employee of the post office.  Could you state the same about yourself, so I will know you are not trying to set me up.

So, If you are still interested in receiving one of my catalogs please Email me at kgvids@rocketmail.com and state you are not associated with any law enforcement agency and I will be glad to Email you.

I look forward to establishing a long lasting business/personal relationship with you and possibly increasing both of our collections.

Defendant responded to this email on November 29, 1999 and certified he was not a postal employee nor a law enforcement officer. Defendant also stated "[l]ike you I am extremely interested in the subject matter you are, except for the boy/boy category." On the same date, the undercover officer sent Defendant an email listing the videotapes being offered for sale including the following two videos:

9998 YOUNG GIRL MASTURBATES: Young girl 12 learns the many pleasures of masturbation while using different toys on herself.

9876 SUZIE AND HER LITTLE BROTHER: Suzie teaches her little brother (both under the age of 14) the many pleasures of sex. Plenty of blow jobs and masturbation from all.

Again, on the same date, Defendant sent an email to the undercover officer stating he wanted to purchase both of the tapes listed above for $25.00 each, however ultimately Defendant sent $30.00 in cash ($25.00 for one videotape and $5.00 to be held on credit for future purchases) for tape number 9998 YOUNG GIRL MASTURBATES.

Subsequent to these emails, a search warrant was authorized for Defendant's residence and a controlled delivery of the undercover tapes arranged. At the time of the search warrant execution, law enforcement officers found and seized 14 computer disks containing child pornography.

In addition, Defendant gave a statement to law enforcement. He stated that he did order videotape 9998 and that he knew it was against the law. In addition, he owned two computers

which were both used to send and receive emails related to ordering the videotape as well as to obtain child pornography from Internet based child pornography websites, newsgroups and to downloading images on at least 12 occasions.

## V.  LEGAL STANDARD

Federal Rule of Evidence 404(b) provides for the admission of Defendant's prior conviction and states:

> (b) Other Crimes, Wrongs, or Acts.–Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This Circuit has specifically held that "[t]he rule is one of inclusion which allows the introduction of evidence of other crimes, wrongs, or acts unless the evidence tends to *only* prove criminal disposition."  United States v. Fields, *et al.*, 871 F.2d 188, 196 (1st Cir. 1989) *citing* United States v. Zeuli, 725 F.2d at 816 and United States v. Ford, 632 F.2d 1354, 1375 (9th Cir. 1980)(emphasis added).   This Circuit has promulgated a two-part test for determining the admissibility of prior "bad act" evidence.  ". . . first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed.R.Evid. 403.  United States v. DeCicco, 370 F.3d 206 (1st Cir. 2004) *citing* United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir. 2001).

> Federal Rules of Evidence 403 states:
>
> Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion and Waste of Time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"Probative value must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charge." Fields, 871 F.2d at 196. This balancing test does not simply exclude prejudicial evidence, as all incriminating evidence is prejudicial. Rather, the Court must find the evidence to be *unfairly* prejudicial. United States v. Gonzalez-Sanchez, 825 F.2d 572, 581 (1st Cir. 1987) ("Of course, the evidence is incriminating; but all highly probative evidence is highly prejudicial in this sense. The question is whether the defendant suffers *unfair* prejudice." *See also* United States v. Scelzo, 810 F.2d 2, 5 (1st Cir. 1997) *citing* United States v. Moccia, 681 F.2d at 63-64. ("It is true that this evidence has the possibility of being prejudicial; but this is inevitably true, since for such evidence to be properly admitted, it must have a similarity sufficient to be probative . . . . Thus the possibility of prejudice is always present in these cases, since the prior wrongful acts will be at least similar if not nearly identical. The prior wrongful act was not, however, shocking or heinous and so was not likely to inflame the jury.") *See also* Fields, 871 F.2d at 198 ("This circuit has recognized with approval the Fourth Circuit's standard which sanctions exclusion only 'in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'")

# VI.  ARGUMENT

A. <u>Defendant's prior conviction for possession of child pornography has "special relevance" as it is probative of his intent, knowledge, lack of mistake or accident and motive.</u>

Evidence of Defendant's prior criminal conduct of accessing the Internet, seeking child pornography and downloading it is relevant to his intent, knowledge, lack of mistake or accident and motive in committing the current offenses.  Defendant has exhibited a pattern of criminal behavior.  "Generally, it is the similarity of the past crime that makes it probative of the material issue in a later trial." <u>Gonzalez-Sanchez</u>, 825 F.2d at 581.  The similarities between Defendant's prior child pornography conviction and the instant offense are striking and are summarized below:

| *Prior Conviction* | *Current Offense* |
|---|---|
| Committed underlying offense in 1998 through 2000 (incarcerated November 2000 to November 2002) | Charged with committing underlying offenses in April 2003 through January 2004 |
| Used computer to commit offense | Used computer to commit offenses |
| Used Internet to commit offense | Used Internet to commit offenses |
| Used newsgroup reader software to commit offenses | Used newsgroup reader software to commit offenses |
| Committed offense from within his residence | Committed offense from within his residence |
| Subscribed to child pornography related newsgroups | Subscribed to child pornography related newsgroups |
| Downloaded child pornography through newsgroups (storage media included disks) | Downloaded child pornography through newsgroups (storage media included computer hard drives) |
| Sought out and found other child pornography collectors | Sought out and found other child pornography collectors |

| | |
|---|---|
| Responded to newsgroup postings | Responded to newsgroup postings |
| Corresponded with other child pornography collectors | Corresponded with other child pornography collectors |
| Accessed child pornography websites | Accessed child pornography websites |
| Purchased child pornography | Purchased child pornography |

The criminal behaviors leading up to the arrests in both of the cases outlined above are so similar they are almost exact. As the First Circuit found in Gonzalez-Sanchez, the inherent similarities support the admissibility of Defendant's prior conviction in the case now before this Court. The prior conviction is admissible as material probative evidence to demonstrate the following:

*Intent*: Defendant's prior conviction has "special relevance" and is probative of his intent to obtain child pornography. The behaviors leading up to his arrest and conviction in 2000 and his arrest in 2004 document a pattern of activity that demonstrates Defendant's interest and desire to obtain images of children engaged in sexually explicit conduct. As the Supreme Court has noted, 404(b) evidence may be critical to the establishment of the truth as to a disputed issue, "especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988) cert. granted and affirmed, 485 U.S. 681 (1988).

*Knowledge*: Defendant's prior conviction has "special relevance" and is probative of his knowledge of how to find child pornography, the illegality of the material, how to operate newsgroups, how newsgroups can be used to download images of children engaged in sexually

explicit conduct, and how to seek out and find others interested in trading child pornography. Admitting evidence of Defendant's prior conviction is even more compelling when analyzed in light of Defendant's recent expert witness disclosure pursuant to Federal Rules of Evidence, Rule 16(a)(1)(E). On February 20, 2006, Defendant notified the Government of an expert witness in the area of forensic computer analysis who would testify as follows:

> . . . that Defendant's computer was left on all of the time and directly connected to the Internet. There was no protection of this computer from a network perspective (firewall or network address translation, NAT device) or a host perspective (personal firewall, anti-spy ware, anti-virus). Therefore, files could be downloaded to the system, even if the client was not accessing the computer. The system had no password protection and the screen was not locked when the system was inactive. Therefore, anyone with physical access to the system could have full access to the computer. The operating system was installed in early 2000 and was never re-installed. The newsgroups the Defendant subscribed to was set to auto-download 24/7 regardless of whether the Defendant was at the computer. Since the computer was left on all of the time, the newsgroup feeds and corresponding images would be downloaded, with no interaction from the Defendant and without the Defendant knowing what was being put on his system. Spyware was also installed on the system and was accessing the system, uploading files on a daily basis . . . .

In light of this disclosure, the need to present evidence of Defendant's knowledge, specifically as it relates to his understanding of how newsgroups work and his use of newsgroups to obtain child pornography is obvious. The need for this evidence is a factor this Court should consider, and tips the balance even further in favor of the admissibility of prior "bad act" evidence. In Gonzales-Sanchez, the court focused on the need for the prior "bad act" evidence in light of the possibility the defendant's actions could be construed in isolation as innocent behavior. The court specifically stated ". . . the need for [the "bad act"] evidence was especially great . . . . . . . . [defendant's] preparation of claims for submission to the insurance company was arguably consistent with the conduct of an innocent and unsuspecting attorney, duped by his clients into

11

unknowingly assisting them in a secret scheme to defraud. Evidence, therefore, that Gonzalez helped gang members collect on other fire insurance policies and evidence that he counselled gang members to commit arson was necessary to dispel the inference of innocent conduct and to prove that his participation was with full knowledge . . . . In contrast to the high degree of probativity of this evidence, the corresponding danger of unfair prejudice was small." Gonzalez-Sanchez, 825 F2d at 582. Likewise, in the case before the Court, the need for the evidence to show the defendant's knowledge is great - the defendant has notified the government that he is likely to present evidence that he had no knowledge that the automatic downloads from the newsgroups would result in his receiving and possessing child pornography - while his past experience with and use of newsgroups for just that purpose would belie this lack of knowledge.

***Lack of Mistake or Accident***: Defendant's prior conviction has "special relevance" in that it demonstrates that defendant's transportation, receipt and possession of child pornography was not a mere accident; specifically, it was not because of a virus, it was not because someone else may have theoretically or hypothetically had access to his computer and it was certainly not because of his ignorance. Defendant's prior conviction shows he was familiar with computers, with the Internet, with newsgroups, with seeking out others with similar interests, and of downloading and purchasing child pornography and access thereto. These are all areas that are material and probative of Defendant's current offenses. Once again, the need for the admissibility of Defendant's prior conviction is further supported by the recent expert witness disclosure outlined above.

B. <u>The probative value of the evidence is not substantially outweighed by the danger of *unfair* prejudice</u>.

As noted above, the similarities between Defendant's prior conviction and the instant offenses are compelling. These similarities substantially increase the probative value of the evidence and as such weigh heavily in favor of admissibility. Rule 403 does not bar powerful evidence even when that evidence is prejudicial; it only bars evidence which will cause the Defendant to suffer *unfair* prejudice. See <u>Gonzalez-Sanchaz</u>, <u>Scelzo</u> and <u>Fields</u>, discussed <u>supra</u>. In addition, the danger of *unfair* prejudice must *substantially* outweigh the probative value of the evidence being offered. Fed.R.Evid. 403. "Congress was not nearly so concerned with the potential effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." <u>Huddleston</u>, 485 U.S. at 688-89.

There is no danger of *unfair* prejudice here. The government does not seek to introduce any of the underlying images of children engaged in sexually explicit conduct that led to Defendant's prior conviction. The government merely seeks to introduce evidence of the mechanisms used by the Defendant to obtain child pornography in order to demonstrate Defendant's intent, knowledge, lack of mistake or accident and motive. Introduction of Defendant's prior conviction will allow the government to demonstrate Defendant's understanding of areas including the availability of child pornography through the Internet, how to access child pornography online including through websites, newsgroups and from other collectors; how to set up a computer to interact with newsgroups to obtain images contained therein as well as other areas demonstrating his intent, knowledge and motive as well as

illustrating lack of mistake or accident. These are all permissive areas of admissibility and do not and are not offered to show Defendant's character or actions in conformity therewith. Therefore, the substantial probative value of this evidence is not substantially outweighed by the danger of *unfair* prejudice.

In addition, any potential prejudicial impact can be cured through an appropriate limiting instruction. *See* Scelzo, 810 F.2d at 4.

### VII. CONCLUSION

Evidence of Defendant's prior conviction for possession of child pornography including the mechanisms he used to obtain it are admissible in the case now before this court as they are probative of Defendant's intent, knowledge, lack of mistake or accident and motive and the danger of *unfair* prejudice is not outweighed by any potential prejudicial impact. As this Circuit specifically treats Rule 404(b) as one of inclusion permitting the introduction of prior "bad acts" unless the evidence is offered only to prove criminal disposition, the evidence is relevant and appropriate, and therefore admissible.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

    /s/Dana Gershengorn
    DANA GERSHENGORN
    Assistant U.S. Attorney
    SHERRI STEPHAN
    Trial Attorney
    United States Department of Justice

Dated: February 21, 2006