IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Criminal No. 04-10217-GAO |
| v. | ) | |
| | ) | |
| DARREN F. WILDER | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE TESTIMONY OF GOVERNMENT'S EXPERT WITNESSES

The United States of America, by and through its counsel, Michael J. Sullivan, United States Attorney for the District of Massachusetts, Assistant United States Attorney Dana Gershengorn and Sherri A. Stephan, Trial Attorney, United States Department of Justice, Criminal Division, Child Exploitation and Obscenity Section, hereby files this opposition to Defendant's motion seeking to preclude the testimony of all the Government's expert witnesses.

## I.    PRELIMINARY STATEMENT

The Defendant, Darren Wilder, is charged with transporting, receiving and possessing visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252.  Defendant now seeks to preclude the testimony at trial of all of the Government's expert witnesses,

1

including an expert in image analysis, an expert in pediatric medicine and a computer forensic analyst.  Defendant argues generally that their testimony would violate the Federal Rules of Evidence, specifically Rules 702, 703 and 704.  For the reasons set forth below the Defendant's motion has no merit and should be denied in its entirety.

## II.    **THE GOVERMENT'S EXPERT WITNESSES**

The Government intends to call three expert witnesses in its case-in-chief:  Thomas Musheno is an expert in image analysis and will testify to his analysis of the images at issue, concluding that they depict real persons and real events.  His opinion is based on the science of image and video analysis, his knowledge of the state of technology in the areas of image and video manipulation and creation, and his knowledge of the artistic ability necessary to create realistic-looking computer generated individuals. Dr. Celeste Wilson is an expert in pediatric medicine including child development.  Dr. Wilson will testify as to her opinion of the age of the children depicted in the images at issue, as well as to her opinion that the children depicted in those images are real. Mr. Nguyen is an expert in computer forensic analysis including computer forensic data acquisition and the Internet.  Mr. Nguyen will provide his expert opinion on the nature of the computer equipment seized from Defendant, including how it may be used, how Defendant employed it, as well

2

as the relationship between Defendant's use of the computer and the Internet focusing on the presence, transportation and acquisition of child pornography.

### III.    APPLICABLE LAW

The admissibility of expert witness testimony is governed by Federal Rules of Evidence 702, 703 and 704, which state as follows:

> *Rule 702: Testimony by Experts*: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> *Rule 703: Bases of Opinion Testimony by Experts*: The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

> *Rule 704: Opinion on Ultimate Issue*: (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state

an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

Before admitting the testimony of an expert witness, the trial judge is required to evaluate both the relevance and reliability of the proposed testimony.  <u>Daubert v. Merrell Dow Pharaceuticals, Inc</u>., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)[1].  The Supreme Court stated that the relevance requirement is already embodied in Rule 702; "the evidence or testimony [is relevant when it] 'assist[s] the trier of fact to understand the evidence or to determine a fact in issue.'" <u>Daubert</u>, 509 U.S. at 591 <u>citing</u> Fed.R.Evid. 702.  Reliability goes to the methodology used to reach the conclusion forming an expert witness's opinion.  <u>Id</u>. At 595.

Until <u>Daubert</u>, the most widely prevailing standard for determining the admissibility of <u>novel</u> scientific evidence was that announced in <u>Frye v. United States</u>, 293 F. 1013, 1014 (D.C. Cir. 1923).  There the court held that the principle or discovery upon which such evidence was based must have "gained general acceptance in the particular field in which it belongs" before such evidence is admissible.  <u>Id</u>.  In the aftermath of that case,

---

[1] The Supreme Court in <u>Daubert</u> addressed *scientific* expert testimony, not *technical* or *other specialized knowledge* witnesses, like in the case *sub judice* – however, the general principles outlined in <u>Daubert</u> will be discussed here.

the _Frye_ "general acceptance test," as it has come to be known,
itself gained widespread acceptance and the state and federal
cases applying it are legion.  _Daubert_, however, changed the
landscape.

In that case, the district court applied the _Frye_ test to
proffered expert testimony attempting to link the drug Bendectin
to the plaintiffs' birth defects and found such evidence wanting;
consequently the court excluded it.  _Daubert_, 509 U.S. at 583-
584.  The Court of Appeals affirmed that evidentiary ruling,
likewise concluding that the evidence failed to satisfy the _Frye_
test.  _Id_. at 584.  The Supreme Court reversed, holding that Fed.
R. Evid. 702 superseded the _Frye_ test and that it was the
standard by which the admissibility of scientific testimony was
to be measured.[2]  _Id_. at 587-588.  In so doing, the Court
characterized the _Frye_ test as "rigid" and "austere," and it
stated that that test is "at odds with the 'liberal thrust' of
the Federal Rules and their 'general approach of relaxing

_____

[2]Rule 702 states:

    If scientific, technical, or other specialized knowledge
    will assist the trier of fact to understand the evidence or
    to determine a fact in issue, a witness qualified as an
    expert by knowledge, skill, experience, training, or
    education may testify thereto in the form of opinion or
    otherwise.

Fed. R. Evid. 702.

traditional barriers to "opinion" testimony.'" Id. at 588-589
(quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169
(1988).  Thus, the Court made clear, Rule 702 was intended to
expand the universe of admissible expert testimony beyond that
which the Frye test would have permitted.[3]

The Court nonetheless recognized that under Rule 702 trial
judges retain a gatekeeping function with respect to scientific
testimony, as they are charged with ensuring that such testimony
is both relevant and reliable.  Id. at 589-590.  More
specifically, the Court stated that judges must make a
preliminary assessment of whether the reasoning or methodology
underlying the proffered testimony is scientifically valid and
whether it can properly be applied to the facts in issue.  Id. at

---

[3]That this is so is especially apparent from the following
passage in the Court's opinion:

> Vigorous cross-examination, presentation of contrary
> evidence, and careful instruction on the burden of proof are
> the traditional and appropriate means of attacking shaky but
> admissible evidence.  In addition, in the event the trial
> court concludes that the scintilla of evidence presented
> supporting a position is insufficient to allow a reasonable
> juror to conclude that the position is more likely than not
> true, the court remains free to direct a judgment, Fed. R.
> Civ. Proc. 50(a), and likewise to grant summary judgment,
> Fed. R. Civ. Proc. 56. . . . These conventional devices,
> rather than wholesale exclusion under an uncompromising
> 'general acceptance' test, are the appropriate safeguards
> where the basis of scientific testimony meets the standards
> of Rule 702.

Daubert, 509 U.S. at 596 (internal cases citations and
parentheticals omitted).

592-593.  While emphasizing that the inquiry envisioned by Rule
702 is "a flexible one," the Court identified several factors
would ordinarily be pertinent: (1) whether the theory or
technique in issue can be and has been tested; (2) whether the
theory or technique has been subjected to peer review and
publication; (3) the known or potential rate of error of the
technique; and (4) whether the theory or technique has gained
general acceptance within a relevant scientific community.  Id.
at 593-594.  Thus, the Court recast the Frye test as but one
factor that a court might consider in making the admissibility
determination.

     Following Daubert, lower courts were divided on the question
whether its teachings applied only to expert scientific testimony
or whether the Court had intended Daubert to encompass other
expert testimony as well, such as that based on specialized (non-
scientific) knowledge.  The Court answered that question in
Kuhmo Tire Co. V. Carmichael, 526 U.S. 1 (1999), a case involving
proffered testimony of an expert in tire failure analysis
regarding the cause of a tire blow out that had resulted in a
fatal motor vehicle accident.  119 S. Ct. 1171-1172.  Applying a
Daubert Rule 702 analysis, the district court excluded the
testimony and the Court of Appeals reversed, holding that Daubert
was limited to scientific evidence, whereas the testimony at
issue in Kuhmo Tire was predicated on "skill- or experience-based

observation." Id. at 1173.  The Supreme Court held that

Daubert's general principles apply to all of the expert matters

described in Rule 702.  Id. at 1174-1175.  It went on to

emphasize the broad leeway afforded trial judges in determining

the reliability of expert testimony and it made clear that the

factors cited in Daubert might be pertinent to that inquiry in

some cases but not in others and that still other identified

factors may be considered on an ad hoc basis.  Id. at 1175-1176.

Daubert and Kuhmo Tire both involved novel expert testimony.

Nothing in those cases suggests that the Court intended to

precipitate a reexamination of the reliability of expert

testimony that has enjoyed longstanding acceptance by the courts.

Put another way, those cases do not suggest that in their

aftermath the government now bears the burden of proof in the

first instance of establishing the reliability of expert

testimony of that sort.  Indeed, several of the Court's

pronouncements in those cases can be read as evidencing a

contrary view.  For example, in Daubert, the Court stated,

> [W]ell established propositions are less likely to be
> challenged than those that are novel, and they are more
> handily defended.  Indeed, theories that are so firmly
> established as to have attained the status of scientific
> law, such as the laws of thermodynamics, properly are
> subject to judicial notice under Rule of Evidence 201.

509 U.S. 593 n.11.

To similar effect is a passage in the Court's Kuhmo Tire

opinion:

The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that exert's testimony s reliable. . . . [A] court of appeals is to apply an abuse-of-discretion standard when it "review[s] a trial court's decision to admit or exclude expert testimony."  That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion.  Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.  Indeed, the Rules seek to avoid "unjustifiable expense and delay" as part of their search for "truth" and the "jus[t] determin[ation]" of proceedings.  Fed. R. Evid. 102.

Id. at 1176 (case citation omitted).  This passage too demonstrates the Court's recognition that there are types of expert testimony that are so well-established that their reliability may be presumed by the trial court, without resort to the needless delay and expense that a Daubert hearing would entail.[4]

A number of lower courts have so construed Daubert and Kuhmo

---

[4]The Court in Kuhmo Tire also stated, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into  question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" 119 S.Ct. at 1175 (quoting Daubert, 509 U.S. at 592).  The implication of that remark is that the opponent of proffered expert testimony must sufficiently call into question the reliability of such testimony before a so-called Daubert hearing-- at which the proponent of the testimony would admittedly bear the burden of proof-- is warranted or required.

<u>Tire</u>.  For example, in <u>Johnson v. Commonwealth</u>, 12 S.W.3d 258, 261 (Ky. 1999), a case in which the defendant challenged the admissibility of microscopic hair analysis, the Supreme Court of Kentucky read <u>Daubert</u> as recognizing that lower courts can take judicial notice of scientific methods, techniques, and theories that are firmly established and are not obliged to "reinvent[] the wheel" in such instances.  The court properly recognized that judicial notice of the reliability of a certain category of expert testimony does not preclude proof to the contrary.  <u>Id</u>. at 262.  It reasoned, however, that such "judicial notice relieves the proponent of the evidence from the obligation to prove in court that which has previously been accepted as fact by the appropriate appellate court.  It shifts to the opponent of the evidence the burden to prove to the satisfaction of the trial judge that such evidence is no longer deemed reliable."[5]  <u>Id</u>.

---

[5]Applying those parameters to the precise factual issue before it, the Kentucky Supreme Court in <u>Johnson</u> went on to state:

> Although we have never specifically addressed the scientific reliability of this method of hair analysis, we must assume that it at least satisfied the Frye test of general acceptance; for otherwise, the evidence would never have been admitted in the first place.  The absence in our previous opinions of any in-depth analysis under the "general acceptance" test was probably due to the overwhelming acceptance of this procedure as a reliable scientific method for the past fifty years. . . . Based on the overwhelming acceptance of this evidence by other jurisdictions, as well as our own history of routine admission of this evidence at trial, trial courts in Kentucky can take judicial notice that this particular

See also Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575
(Ky. 2000) (although Daubert applies to all expert testimony
offered pursuant to Rule 702, "the application is markedly
different depending on whether the method or technique, upon
which the testimony is based, has been recognized as reliable by
existing caselaw").

The Supreme Court of Alaska is of a like view.  In State v.
Coon, 974 P.2d 386, 397-398 (Alaska 1999), a case involving a
challenge to the trial court's admission of spectographic voice
identification, the court abandoned the Frye test in favor of
Daubert.  In so doing, it had occasion to address the stated
concern of an amicus that under Daubert there will be increased
litigation regarding non-novel evidence that had been deemed
admissible under Frye.  The court stated,

> [W]hen an area of expertise is well-known and has been fully
> considered by the courts, a trial court may take judicial
> notice of its admissibility.  The Supreme Court advocated
> this approach.  Moreover, general acceptance remains a
> factor under Daubert.  It also seems unlikely that
> methodologies that were admitted under Frye and that remain
> generally accepted in the appropriate community will be
> excluded, absent affirmative evidence of unreliability.

Id. at 402 (footnotes omitted).

─────────────────────

method or technique is deemed scientifically reliable.

Id. at 262-263.  Finding that the defendant had failed to prove
that such hair analysis was no longer reliable, the court
affirmed the trial court's ruling admitting the expert testimony.
Id. at 263-262.

11

The District Court for the District of Columbia put the matter succinctly in a case in which the defendant sought pretrial Daubert hearings on the admissibility of all of the government's proposed expert testimony, including that relating to ballistics and fingerprints (the defendant did not specify in what manner the testimony was alleged to be unreliable):

> Although the Court must ensure that expert testimony is reliable and admissible, there is nothing in Kuhmo Tire or Daubert that requires the Court to conduct a pre-trial evidentiary hearing if the expert testimony is based on well-established principles. . . . When a principle is well-established,

> the questions are simply whether the expert properly applied the established scientific principle to the facts and whether the expert's credibility is compromised for reasons such as bias.  These are matters that a jury usually is competent to evaluate after cross-examination and presentation of competing expert testimony.  Accordingly, where expert testimony is based on well-established science, the courts generally have concluded that reliability problems go to weight, not admissibility.

United States v. Cooper, 91 F. Supp.2d 79, 82, (D.D.C. 2000) (quoting Wright and Gold, Federal Practice and Procedure § 6266, at 265).  Se also United States v. Nichols, 169 F.3d 1255, 1262-1263 (10th Cir. 1999) (affirming trial court's denial of a motion for a Daubert hearing where the challenged evidence-- expert testimony regarding chemical testing of an object recovered from the site of the Oklahoma City federal building bombing-- did not involve any new scientific theory and the testing methodologies employed were well-known techniques routinely used by chemists).

12

Because none of the expert testimony challenged by the defendant in this case involves a novel scientific procedure, Daubert hearings are both unnecessary and inappropriate; Defendant's motion should be denied.

IV.    **ARGUMENT**

A.    **Testimony from an expert in image analysis and an expert in pediatric medicine opining that children depicted in child pornography images are "real" is relevant; it will assist the jury in determining a fact in issue, and is reliable.**

The government must prove beyond a reasonable doubt that an image of a child engaged in sexually explicit conduct depicts a "real" child. Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). In doing so, the government does not have to present expert testimony on the issue; the government can merely present the images to the jury and let them decide. United States v. Farrelly, 389 F.3d 649, 652 (6th Cir. 2004) ("Free Speech Coalition does not require the Government to do more . . . than present the images to the jury for a determination that the depictions were of actual children.")[6]  However, the government

_____

[6] Circuits addressing this issue have come to the same conclusion: United States v. Irving, 432 F.3d 401, 413 (2nd Cir. 2005) (extrinsic evidence not necessary to prove actual child depicted in image); United States v. Riccardi, 405 F.3d 852, 870 (10th Cir. 2005); United States v. Slanina, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam); United States v. Kimler, 335 F.3d 1132, 1140-42 (10th Cir. 2003) cert. denied 540 U.S. 1083, 124 S.Ct. 945, 157 L.Ed.2d 759 (2003) (Free Speech Coalition does not require expert testimony to establish that the images depict real children); United States v. Deaton, 328 F.3d 454, 455 (8th Cir. 2003)

is not precluded from presenting testimony to assist the trier of fact in rendering this decision, including by presenting the opinions of expert witnesses.  See Fed.R.Evid. 702.

As previously stated, the Government intends to present the testimony of two witnesses on the issue of whether a *real* child is depicted in the images at issue: an expert in image analysis and an expert in pediatric medicine.  Defendant opposes the testimony of both.  Each expert witness will be discussed independently below.

1. ***Thomas Musheno: Expert in Image Analysis***:  Defendant inaccurately states that the Government is seeking to present " . . . the testimony of Thomas Musheno to testify that he uses a checklist and his eyeballs to determine whether images are real or morphed."  Defendant's Motion, page 2.   But Mr. Musheno bases his opinion on his education, training, and years of experience, including a Masters of Science degree in Communications Photography, a Bachelor of Science degree in Professional

---

(per curiam) (jury instructed on need to find images involved use of minor; images themselves can be the only evidence); United States v. Hall, 312 F.3d 1250, 1260 (11th Cir. 2002) (court examined the images sent to the jury and concluded "the children depicted in those images were real and that no reasonable jury could have found that the images were virtual children . . . as opposed to actual children"); United States v. Vig, 167 F.3d 443, 449 (8th Cir. 1999) ("The images were viewed by the jury which was in a position to draw its own independent conclusion as to whether real children were depicted.").

14

Photography, training at the University of Virginia and by the Federal Bureau of Investigation in Crime Laboratory Forensic Photography, and other training including but not limited to Electronic Imaging, Digital Image Processing, and Photoshop for Engineers. For over ten years, since 1994, Mr. Musheno has been working as a Forensic Examiner for the Federal Bureau of Investigation in the Forensic Audio, Video and Image Analysis Unit in Quantico, Virginia. His responsibilities specifically include the analysis of images to determine if they have been altered or manipulated. For example, it is this unit that is called upon to determine if video clips depicting prisoners being be-headed in Iraq depict real events. In addition, Mr. Musheno has presented and lectured at numerous venues on topics ranging from Detecting Image Manipulation in a Digital World; When is Evidence Considered Manipulated?; A Closer Look at Digital Evidence; and Detecting Manipulation Artifacts in Digital Imagery.

Image analysis itself has been widely used in a variety of contexts in the federal and other courts for decades. The particular application of image analysis in this case, which involves analyzing images of child pornography to determine whether they have been altered, computer generated, and/or contain real people, has itself been in use and admitted in the courts since the mid to late 1990s. For example, in United

States v. Rearden, the trial court accepted the testimony of a
government expert witness in the ". . . creation of visual
effects based on his training and experience in the film
industry" on the issue of whether the charged images depicted
real children.  Rearden, 349 F.3d 608, 613 (9th Cir. 2003) cert.
denied 543 U.S. 822, 125 S.Ct. 32, 160 L.Ed.2d 32 (Oct 4, 2004).
The expert ". . . testified that in his opinion, the images
transmitted by [the defendant] had not been manipulated in any
manner . . . . [The expert] stated that it was beyond the limits
of modern computer graphics to create a completely artificial
picture of a believable photo-realistic human being (except,
perhaps, of people who are very small in the background) . . . .
[The expert] examined the images and opined that they were not
manipulated, that any attempted creation of a digital photo
realistic human being would be readily apparent, and that these
images were entirely consistent as photographs."  Reardon, 349
F.3d at 614.  The court concluded that "[b]ased on this testimony
the trier of fact could reasonably conclude that the government
had carried its burden of proving that the images depicted actual
children."  Id.

Mr. Musheno is well-trained and has a great deal of
experience in this area.  He himself has testified on this
specific topic 5 times in federal and one military court, and his
colleagues at the FBI have testified on this issue approximately

another 12 times.  For all of these reasons, the admissibility of Mr. Musheno's testimony is clear, and a <u>Daubert</u> hearing is not appropriate.

2.  ***Dr. Celeste Wilson: Expert in Pediatric Medicine***:  Dr. Wilson will provide her opinion of the ages of the children depicted in the images at issue as well as her opinion that the children depicted in those images are real.  Defendant challenges her opinion on the latter.  Dr. Wilson received her Medical Degree from Columbia University and a Bachelor of Science degree from Harvard University.   She was an intern and resident in Pediatrics at Children's Hospital in Boston, Massachusetts.  She is Board Certified in Pediatrics.  Dr. Wilson has been an instructor in Pediatrics at Harvard Medical School as well as an Assistant in Medicine at Children's Hospital where she is a teaching attending in Inpatient General Pediatrics as well as a staff pediatrician in the Child Protection Program and the Urgent Care Clinic, Pediatric Heath Associates.  She is a frequent lecturer on topics ranging from identifying child abuse, normal pubertal progression and the nuts and bolts of child development.

In arguing against the admission of Dr. Wilson's expert testimony, Defendant merely states that ". . . she has no training in computer graphics and cannot testify that the images are not morphed or are of virtual children."  Defendant's Motion, page 3.  But the Government is not seeking to present Dr. Wilson

as a computer graphics expert.  Dr. Wilson has extensive
experience in examining children first-hand and she is well
versed in the physical attributes and the developmental
characteristics of children, including facial features, body
proportions, normalities and abnormalities in development, skin
folds, tendons, bone contours, axillary folds, nipple structure
and of the development of children's breast and genitalia.  It is
based upon this skill and expertise that she is well-qualified to
render an opinion. Defendant's concerns about Dr. Wilson's lack
of training in computer technology are appropriately reserved for
cross-examination.

The First Circuit has found that testimony by a
pediatrician, a medical expert in the development of children,
can assist the jury in establishing that the images in question
are of real children.  United States v. Nolan, 818 F.2d 1015,
1019 (1st Cir. 1987)[7].   Other circuits have also accepted the
testimony of a pediatrician on the issue of whether a real child
was depicted in an image at issue.  See United States v. Bender,

_____

[7] In Nolan, the following exchange took place between the
prosecutor and the government's expert medical doctor: "Q: And
why do you conclude that, Doctor?  People can doctor photographs.
People can alter photographs, Why do you conclude that these are
not altered photographs or perhaps composites of adult genitalia,
let's say, with children's torsos and arms and legs and heads?
A: Well, I think that that kind of conglomeration of parts, body
parts, would be very bizarre appearing, because of the
differences in size, texture.  The gestalt would be wrong; in
other words, the total picture would not be of a normal human
being, most likely."  Nolan, 818 F.2d at 1019.

290 F.3d 1279, 1282 (11ᵗʰ Cir. 2002) (an expert in pediatric medicine testified that "photographs appeared to portray real children") and United States v. Vig, 167 F.3d 443, 449-50 (8ᵗʰ Cir. 1999) (jury could infer from images and pediatrician's testimony that children depicted were real).

Defendant cites Hilton to support his misplaced argument that it is "insufficient for the Government to offer the testimony of a pediatrician as to the age of children depicted in images" in support of proving a real child is depicted. Defendant's Motion, Page 2.  Not only is Defendant's argument flawed, but he relies on the Hilton opinion issued and subsequently withdrawn on grant of rehearing by the First Circuit Court of Appeals.  On rehearing, the First Circuit focused on the fact that at the time the defendant was convicted, the trial court did not believe that the Government had to prove a real child was depicted in the child pornography images.  United States v. Hilton, 386 F.3d 13 (1ˢᵗ Cir. 2004).  The medical expert in Hilton had only testified to the ages of the children depicted in the images at issue and did not go further.  Hilton, 363 F.3d at 15.  The Court held that the testimony as to age simply did not go far enough in conjunction with the "erroneous understanding [by the trial judge] at the time of conviction, [that] possession of child pornography could be punished criminally *even if* the depicted children were artificial and real

19

children were not involved in the production of the images." Id.
at 19.  In the case *sub judice*, Dr. Wilson will not only testify
as to the ages of the children depicted in the images, but she
will also testify that based upon her years of training and
experience in pediatric medicine, it is her opinion that the
images depict real children.  This is exactly the kind of
testimony that the First Circuit looked for and found lacking in
the Hilton case.

Dr. Wilson's anticipated testimony is in compliance with
Federal Rules of Evidence 702, 703 and 704 as well as meets
Daubert standards.  Her testimony is relevant to a fact at issue,
*to wit*, whether the images at issue depict real children and
therefore her expert opinion will assist the trier of fact.  Her
testimony is also reliable in that it is based upon her
education, training and years of extensive experience in
pediatric medicine and is based on sufficient facts or data –
specifically the images at issue in this case retrieved from
Defendant's computer.  In addition, the nature of Dr. Wilson's
testimony has been accepted and proven relevant and reliable by
other courts in similar circumstances, including in the First
Circuit.  For all of these reasons, the admissibility of Dr.
Wilson's testimony is clear, and a Daubert hearing in not
appropriate.

B.    **The testimony of the Government's expert witness in the field of computer forensic analysis is relevant; it will assist the jury in determining a fact in issue, and is reliable.**

Finally, the Defendant also challenges the admissibility of the testimony of Lead Computer Forensic Specialist, Lam Nguyen. Mr. Nguyen is well qualified to testify as an expert in this case.  He has a Masters degree in Information Technology as well as a Bachelor of Science degree in Accounting Information systems.  He received forensic computer training by the International Association of Computer Investigative Specialists as well as training directly from Encase, the software used to aid his analysis[8].  Since 2002, Mr. Nguyen has worked as a Lead Computer Forensic Specialist in the High Technology Investigative Unit where his responsibilities include conducting forensic examinations of target computers seized in criminal investigations. He has testified on several occasions, including in the District of Massachusetts as an expert presenting testimony related to computer forensic evidence involving the possession and receipt of child pornography.  He is also part of the adjunct faculty at George Mason University in the School of Information Technology and Engineering.  Mr. Nguyen has performed over 75 forensic examinations of computer hard drives, and has

_____

[8] Defendant has also challenges the use of Encase stating is fails to meet Daubert standards.  The Government's response to this challenge is contained in a separate pleading filed simultaneously with this memorandum.

21

performed thousands of forensic examinations of computer media.

In arguing against the admission of Mr Nguyen's expert testimony, Defendant merely states that Mr. Nguyen should be precluded from testifying directly about Defendant's state of mind, specifically opining that Defendant "knowingly" transported, received and possessed images of children engaged in sexually explicit conduct.  Defendant's Motion, page 3.  The Government does not intend to elicit opinion testimony from Mr. Nguyen as to whether Defendant acted "knowingly."  However, the Government intends to elicit testimony from Mr. Nguyen to establish the affirmative steps taken by Defendant to seek out and obtain images of children engaged in sexually explicit conduct as well as to transport it in interstate commerce.  In addition, the Government intends to elicit testimony from Mr. Nguyen that will *attribute* knowledge to Defendant, including but not limited to Defendant's use of newsgroups, how he used newsgroups to download images of children engaged in sexually explicit conduct, how he sought out and found another individual interested in trading images of children, and evidence demonstrating Defendant's familiarity with computers and with the Internet.  Mr. Nguyen will provide his factual testimony, and when necessary his expert opinion based upon his extensive education, training and experience analyzing computer evidence. Defendant does not challenge Mr. Nguyen's testimony related to

22

these areas; therefore, no further discussion or argument on this issue seems warranted at this time.

## V.    <u>CONCLUSION</u>

The anticipated testimony of the Government's expert witnesses including Thomas Musheno, an expert in digital analysis, Dr. Celeste Wilson, an expert in pediatric medicine, and Lam Nguyen, an expert in computer forensic analysis is in compliance with Federal Rules of Evidence 702, 703 and 704 as well as meet <u>Daubert</u> standards.  The proposed testimony is relevant to a fact at issue and therefore will assist the trier of fact.  Their testimony is reliable in that it is based upon their respective education, training and extensive experience in their fields.  In addition, the nature of the testimony offered has been accepted and proven relevant and reliable by other courts in similar circumstances.  Based on the foregoing, the Government respectfully request this Honorable Court deny Defendant's motion in its entirety.

Respectfully submitted,

MICHAEL SULLIVAN
United States Attorney

By:/<u>s/Dana Gershengorn</u>
DANA GERSHENGORN
Assistant United States Attorney
617-748-3120
SHERRI A. STEPHAN
Trial Attorney
U.S. Department of Justice
202-353-4438

Dated: March 3, 2006