UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA   )
                                          )     CASE NO. 04CR10217GAO
v.                                       )
                                          )
DARREN F. WILDER            )
_____)

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR
TESTIMONY REGARDING *ENCASE* FORENSIC SOFTWARE**

Although the Government would prefer not to have an evidentiary hearing pursuant to Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), only a hearing can assure the Court of the methodology of the EnCase software and its alleged reliability (See Affidavit of Peter Charles Horstmann, Esquire, filed herewith).

The Government essentially concedes in its 20 page Opposition that no federal court has previously determined the admissibility of *EnCase* forensic software under Daubert v. Merrel Dow Pharmaceuticals, Inc., and Kumho Tire Co. v. Carmichael, 119 S.Ct. 1167 (1999). The best the Government can offer is that a California Superior Court ruled that *EnCase*'s validity and reliability were sustained "after a lengthy hearing". People v. Rodriguez, Sonoma County, California Superior Court No. SCR 28424 (2001). However, in Rodriguez, defense counsel conceded that EnCase's methodology was accepted, but challenging the authentication of the reports EnCase produced. (Transcript of Hearings on January 9-11, 2001, pp. 88-89).

No other cases cited by the Government address the issue of admissibility. If the Government had found a single federal case establishing EnCase's reliability under Daubert and

Kumho, its Opposition would have been two pages instead of 20. The Government cites to United States v. Frabizio, 03-10283-NG for the proposition that EnCase has been admitted in this District. This is false. No objection was raised to the admissibility of EnCase.

As a result, not only are the cases cited by the Government inapposite to the issue to be decided by this Court, they are hopelessly mischaracterized by the Government in its Opposition. In several places, the Government states that EnCase is "already well accepted under Daubert." This is false. The fact that an issue has not previously been raised resulting in the admission of evidence, does not indicate acceptance of the methodology or reliability of the EnCase program. As discussed, the only case the Government could find in which any kind of *Daubert* analysis was used to scrutinize EnCase appears to be the Rodriguez state court case in California.

The Government also posits that the pervasive use of *EnCase* by state and federal law enforcement supports its reliability. Law enforcements' use of an investigative tool cannot supplant the Court's gatekeeping function under Daubert. For example, law enforcement routinely uses polygraphs which are not admissible in Court.

The Government also repeatedly argues that EnCase has a "longstanding" history of reliability. Government's Opposition p. 18. Nothing could be further from the truth. Even the Government's own exhibits acknowledge that the EnCase program was developed in 1998. See Government Exhibit 3. The oldest case cited by the Government referencing EnCase is from 1999 and the vast majority of federal and state cases cited by the Government are from 2003 to the present. Therefore, it is likely that with law enforcement using the EnCase program more and more frequently EnCase is finding its way into Court with greater frequency and is now ripe for a hearing under Daubert.

The Government also attempts to relieve itself of the burden of establishing the reliability of the EnCase program at a hearing as required under <u>Daubert</u> by relying on a single state court case which suggests that when scientific methodology is so firmly established, the Court can exercise its judicial notice function and relieve the proponent of the evidence of its burden of proof. These principles to do not apply to the instant case because this will likely be the first time that EnCase has been subjected, at least on the federal level, to any type of <u>Daubert</u> analysis. More importantly, in <u>Johnson v. Commonwealth</u>, 12 S.W. 3d 258, 261 (Kentucky, 1999), the lonely case relied upon by the Government, a defense attack was lodged against microscopic hair analysis. However, this was a firmly established, well received scientific method of investigation previously admitted by courts such that the Kentucky court was disinclined to "reinvent the wheel" simply because there was a new challenge to its introduction. <u>Id.</u>

Here, there is no wheel to reinvent. No federal court has ruled that the EnCase program does what the Government purports or that it is reliable. While the Government's opposition contains a dissertation from Government counsel on how the program is alleged to operate with no supporting affidavit, such statements by counsel cannot replace direct testimony from an expert and subject to cross-examination. More importantly, the Government's explanation misses several key points including, but not limited to the following, which could be challenged at a <u>Daubert</u> hearing:

First, assuming the Government has correctly described the method in which the software retrieves deleted images from a computer hard drive, it does not describe how information such as file names and dates of creation, access and deletion are established. Also, assuming the software in question has been used in prior computer investigations in which child pornography

has been discovered on the hard drive of a computer, (along with spyware, viruses and trojan horses), what prevents the software from contamination in a future investigations? As discussed, the software does not just retrieve images as the Government disingenuously reports. The software allegedly retrieves dates and times that images were allegedly created, accessed, last written, and deleted. All of this information is crucial to the Government's burden of proof.

For example, the Defendant expects that there will be evidence in this case that his computer had two previous owners before it was given to him. The dates that certain images were alleged to have been created and/or accessed is crucial to determining not only the Defendant's culpability, but the applicable sentencing statute if he is convicted. As the Court is aware, the PROTECT Act amended child pornography statutes in 2003 by increasing the penalties for the charged offenses and creating severe mandatory minimum sentences.

Additionally, the Government relies upon the 2003 Department of Justice study to argue the reliability of the EnCase program. Even if it is the most comprehensive study that exists regarding the EnCase program, it by no means would supplant the Court's function as gatekeeper under <u>Daubert</u>. The 2003 study, by a biased entity such as the DOJ, leaves many questions unanswered such as the methodology and reliability of the recovery of deleted images, various anomalies in the computer program, and other crucial issues which this Court must decide prior to admissibility. (See Affidavit of Peter Charles Horstmann, Esquire).

Lastly, the Government's Exhibits do little to establish the methodology and reliability of the EnCase program in the instant case. Government's Exhibit 1 deals primarily with corporate security and does not mention recovery of deleted files or image files. Government's Exhibits 2, 3 and 4 do not mention the recovery of deleted files. Government's Exhibit 5 was published by

the manufacturer of EnCase as a sales pitch for the EnCase Legal Journal. Similarly, Government's Exhibits 5, 6, 7 and 8 do not discuss EnCase's ability to recover deleted files or image files. In fact, none of the Government's Exhibits discuss anything remotely relevant to the facts of this case.

Accordingly, the Defendant requests a <u>Daubert</u> hearing on the instant matter at which the Government will have the burden of proving EnCase's methodology and reliability.

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

**CERTIFICATE OF SERVICE**

I, Peter Charles Horstmann, Esquire, hereby certify that on this 8th day of March, 2006, a copy of the foregoing DEFENDANT'S WITNESS LIST was served electronically upon Dana Gershengorn, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210 and upon Sherri A. Stephan, US Department of Justice, Child Exploitation and Obscenity Section, 1400 New York Avenue NW, 6th Floor, Washington, DC 20005

Peter Charles Horstmann, Esquire